# CELLO HOLDINGS, L.L.C. and CELLO MUSIC & FILM SYSTEMS, INC., Plaintiffs,

v.

# LAWRENCE–DAHL COMPANIES and Lawrence Storey, Defendants.

### No. 97 Civ. 7677 (DC).

United States District Court, S.D. New York.

March 6, 2000.

claims and find them to be without merit.

Hunton & Williams, by Christopher M. Mason, Jeffrey W. Gutchess, Elisabeth Stewart Bradley, New York City, for Plaintiffs.

Engel & McCarney, by James G. McCarney, Thomas E. Engel, New York City, for Defendants.

## *MEMORANDUM DECISION*

CHIN, District Judge.

In 1997, defendant Lawrence Storey registered the Internet domain name "cello.com." Plaintiffs Cello Holdings, L.L.C. and Cello Music & Film Systems, Inc. and their predecessors (collectively, "Cello") have been selling "high end" audio equipment under the "Cello" name since 1985, and Cello registered the trademark "Cello" for use in the audio equipment business in 1995. Cello commenced this lawsuit, contending that Storey's actions in registering and trying to sell the domain name "cello.com" were diluting its trademark "Cello."

Before the Court are the parties' cross-motions for summary judgment. Cello contends that Storey is a "cybersquatter" who had no "productive use" in mind for the domain name when he registered it. Rather, Cello contends that Storey registered the name solely for the purpose of "blackmail[ing]" someone into buying it. Storey, on the other hand, contends that Cello has failed to demonstrate that the "Cello" mark is distinctive or famous, and argues that "cello" is a common noun used in the names of dozens of businesses. Storey, a California resident, also contends that the Court lacks personal jurisdiction over him.

Because there remain genuine issues of material fact as to the merits, the parties'

cross-motions for summary judgment are denied. In addition, Storey's assertion that this Court lacks personal jurisdiction over him is rejected.

## BACKGROUND

### A. The Facts

#### 1. Plaintiff

Cello has been promoting and selling audio equipment for the "hi-end" market and for professional recording studio work under the "Cello" name since 1985. (Adams Decl. ¶ 7). Cello sells its audio equipment both directly through stores in New York, Los Angeles, Houston, Dallas, and Seattle, and through authorized distributors in six states and fourteen foreign countries. (Beck Decl. ¶¶ 4–5).

Cello music systems are "high-end" systems; they sell for a minimum of $20,000 and for as much as $150,000 to $500,000 or more. (Adams Decl., Ex. I). In the past decade, Cello has sold more than $42 million of equipment in the U.S. and abroad. (DiSalvo Decl. ¶¶ 3–4). Cello's equipment has been reviewed in a number of magazines, including *Audio/Video Interiors, Hi–Fi News & Record Review, High Performance Review, Stereophile, Suono, The Absolute Sound, The Home Theater Authority, Video Magazine,* and *Vive La Vie.* (Adams Decl. ¶ 14, Exs. C–P).

#### 2. Defendants

Storey is a former musician who runs a small business out of his home in California selling "vintage audio equipment and accessories" under the name Audio Online. (Storey Decl. ¶ 2). He has sold "mid-fi or hi-fi" audio equipment over the Internet under his own name since about April 1997 and under the business name, Audio Online, since early 1998. (Storey Tr. at 28–29, 51–56, 58, 104–05, 227–28, 324–33; Mason Decl., Ex. X). Storey has sought to conduct "a vintage clothing business," as well as other interests, under the name "Lawrence–Dahl Companies," but he contends that this business "never got off the

ground" and that therefore defendant Lawrence–Dahl Companies is not a separate legal entity. (Storey Decl. ¶ 2).

Storey has registered numerous domain names with Network Solutions, Inc. ("NSI"), an Internet domain name registry, including "cello.com," "gotmilk.com," "stereo.com," "4nasdaq.com," and "thenyse.com." (Storey Tr. at 106, 111–13, 126–33, 167–68, 218, 255–56, 261, 264–66, 281–82; Mason Decl., Exs. M, Q, R, T). Using a website called "logicaldomain.com," Storey advertised a number of his registered domain names for sale to the public, including "cello.com," "hosemonster.com," and "goldmetal.com." He has sold two domain names, "hosemonster.com" and "numerouno.com," for a total of approximately $1,100. (Storey Tr. at 112, 134; *see* Mason Decl., Ex. M).

#### 3. The "Cello" Mark

A "cello" is a musical instrument—"the bass member of the violin family tuned an octave below the viola." *Webster's New Collegiate Dictionary* 177 (1980).

The mark "cello," alone or in combination with other words, has also been registered with the United States Patent and Trademark Office (the "PTO") for use with different products or services by many businesses that are not a party to this lawsuit. These include, for example: Cello Chemical Company for floor waxes and furniture polish ("Cello" and "Cello Brate"); Arthur Schuman Inc. for cheese ("Cello" and "Cello" with a design); General Mills, Inc. for stainless flatware ("Cello"); Cellocoup, S.A. for packing and wrapping materials ("Cello"); Goldmine Internet Services N.V. for telecommunications, computer programming services, and scientific, electric, and teaching materials ("Cello"); Teknion Furniture Systems for office furniture ("Cello"); Ava Care for juice of the Aloe Vera Plant ("Cello–Gel"); Aloe Development Corp. for perfumes and skin care products ("Cello by Annette"); Perfect Plus, Inc. for hair

care services ("Cello–Gloss"); Chase Bag Company for paper bags ("Cello–Ply"); Grissom, Pinkney O'Shaughnessy for musical entertainment services ("Cajun Cello"); Virus Reference Laboratory, Inc. for media used in medical packaging ("Cello–Gel"); Les Emballages Du Reins for paper and clear plastic wrap dispensing machines ("CelloCoup"); Sebastian International, Inc. for shampoo ("Cello–Shampoo"); Bognar and Company, Inc. for lightweight dry insulating composition ("Cello–Crete"); and John Reed for sound recordings ("CelloSex"). (Hans Decl. ¶ 2 & Ex. 1).

Defendants' counsel's Internet searches also reveal that numerous businesses other than plaintiffs use the word "cello" as part of their name, including, for example: Cello Printers Inc., Club Cello, Cello Development Corporation, Cello Pack Corporation Buffalo, Cello Group Inc., Cello Antiques, Cello–Foil Products Inc., Cello Bag Inc., Cello Vision Plant, and Cello Audio Plus. (Hans Decl. ¶ 3 & Ex. 2).

"Cello" also is the name of a multipurpose Internet browser developed by the Legal Information Institute at Cornell Law School. (Hans Decl. ¶ 4 & Ex. 3).

In August 1995, Cello obtained a federal trademark registration for "Cello" from the PTO. The PTO issued a trademark registration to Cello for the use of the mark "Cello" in connection with "amplifiers, preamplifiers, tone controls, speakers, switch boxes, power supplies, and associated accessories." (Adams Decl., Ex. B).

In June, 1997, Storey registered the domain name "cello.com" with NSI. (Storey Tr. 255–56; Mason Decl., Ex. U). He did so as part of his effort to register the single noun names of at least twenty musical instruments, including, among others, "guitar.com," "drums.com," and "violin.com." He found, however, that with the exception of "cello.com" the names were already registered. (Storey Decl. ¶ 5; Storey Tr. at 343). At the time, he was aware that "Cello" was a brand name for audio equipment. (Storey Tr. at 92–93, 96).

### 4. *Storey's "Presence" in New York*

Storey is a citizen and resident of California. He has never resided in or been a citizen of New York. He has never owned any real property or maintained any offices, bank accounts, or telephone listings in New York. He has not personally visited New York in almost thirty years. (Storey Decl. ¶¶ 2, 4).

Although Storey's business, Audio Online, "does not specifically target New York customers," it "seeks to promote sales internationally through the internet." (Storey Decl. ¶ 3). After the filing of this lawsuit, Storey had "a few isolated sales [of equipment] totaling approximately $1,000" to customers in New York. (Storey Decl. ¶ 3; *see also* Storey Tr. at 228). He believes that he did not have any such sales to customers in New York prior to the lawsuit. (Storey Decl. ¶ 3).

In 1997, within days after he registered the domain name "cello.com," Storey sent electronic mail messages over the Internet to at least nine individuals or companies he had targeted, offering to sell "cello.com" for $4,800. (Storey Tr. at 149–56; Mason Decl., Exs. B–J). Storey also telephoned a Cello store in Los Angeles and was referred to Cello in New York. He then telephoned Cello's then-president, Mark Levinson, in New York in an effort to sell "cello.com" to Cello for approximately $5,000 or in exchange for some equipment. Storey telephoned Levinson a second time, again offering Cello the opportunity to buy "cello.com." (Storey Tr. at 81–88, 97, 99, 147, 170). Storey also contacted someone at Cornell University in Ithaca, New York, who he thought might be interested in purchasing the domain name. (Mason Decl., Ex. J).

In addition to attempting to sell "cello.com" via electronic mail and over the telephone, Storey offered it for sale (together with other domain names he had registered) on a website entitled "logicaldomain.com." (Storey Tr. at 106, 111, 168;

Mason Decl., Ex. M). The "logicaldomain.com" site was open to everyone in the world and was viewable by New York residents. (Storey Tr. at 144–45).

## B. *Prior Proceedings*

Cello commenced this action on October 16, 1997, asserting claims under the Federal Trademark Dilution Act (the "FTDA"), 15 U.S.C. § 1125(c), and § 360–1 of the New York General Business Law. N.Y. Gen. Bus. L. § 360–1 (McKinney Supp. 1999). After discovery, these motions followed.

In November 1999, while the cross-motions for summary judgment were pending, the Anticybersquatting Consumer Protection Act (the "ACPA") was signed into law. Pub.L. No. 106–113, 113 Stat. 1501 (1999) (to be codified at 15 U.S.C. § 1125(d)). On February 2, 2000, the Second Circuit issued a decision interpreting the ACPA—the first interpretation of the ACPA at the appellate level—in *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489 (2d Cir.2000).

In light of these developments, Cello requested leave of the Court to amend the complaint to add a claim under the ACPA. Defendants opposed the request, arguing that the ACPA was inapplicable. The Court then asked for, and received, supplemental briefing from the parties on the applicability of the ACPA and *Sporty's* to this case.

## DISCUSSION

### A. *Local Civil Rule 56.1*

■ A threshold issue is presented by defendants' failure to submit, on a timely basis, a "separate, short and concise statement of the material facts" as required by Local Civil Rule 56.1, either in support of their motion or in opposition to Cello's motion. Defendants did not submit a Rule 56.1 statement until two months after they

had cross-moved for summary judgment and a month and a half after Cello had filed reply papers.[1] Cello objects to defendants' late-filed 56.1 statement and argues that it should be rejected and the facts contained in Cello's 56.1 statement deemed admitted.

Cello's objection to defendants' late Rule 56.1 statement is overruled. Defendants did submit, on a timely basis, declarations and other evidentiary materials that challenged Cello's factual assertions, and they also submitted a timely memorandum of law. The facts contained in their late Rule 56.1 statement do not contradict the facts asserted in their earlier filed declarations and other materials. Hence, there is no prejudice to Cello if defendants' Rule 56.1 statement is accepted. On the other hand, defendants will be seriously prejudiced if the facts asserted in Cello's Rule 56.1 statement are deemed admitted merely because their attorneys inadvertently neglected to file a Rule 56.1 statement when they filed their initial papers. *See Citibank N.A. v. Outdoor Resorts of Am., Inc.*, No. 91 Civ. 1407, 1992 WL 162926 (S.D.N.Y. June 29, 1992) (holding that granting summary judgment in favor of plaintiff on basis of defendants' failure to submit a Rule 56.1 statement was unwarranted where defendants submitted papers that made defendants' basis for opposing summary judgment sufficiently clear); *see also Abu–Nassar v. Elders Futures Inc.*, No. 88 Civ. 7906, 1994 WL 445638 (S.D.N.Y. Aug.17, 1994) (holding that the court's "striking" of an untimely [56.1] statement is discretionary).

Accordingly, I accept Storey's belatedly filed Rule 56.1 statement and I have considered it in deciding these motions.

### B. *Personal Jurisdiction*

Defendants' motion for summary judgment is denied to the extent they seek to

---

1. At that time, defendants also submitted a "supplemental declaration" of attorney Rupinder Hans. I have not considered the "sup-

plemental declaration" in deciding these motions.

dismiss the complaint for lack of personal jurisdiction, for I conclude that this Court has personal jurisdiction over Storey pursuant to the New York long-arm statute.

██ In considering the issue of personal jurisdiction over a non-domiciliary, a court must first apply the forum state's long-arm statute and then determine, if the requirements of the long-arm statute are met, whether the exercise of jurisdiction over the defendant would comport with the requirements of due process. *See PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108–10 (2d Cir.1997); *see also Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1319 (9th Cir.1998).

██ Here, the relevant long-arm statute is section 302(a)(3)(ii) of the C.P.L.R., which provides that:

> a court may exercise personal jurisdiction over any non-domiciliary ... who ... commits a tortious act without the state causing injury to a person or property within the state ... if he ... expects or reasonably should expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y.C.P.L.R. § 302(a)(3)(ii) (McKinney 1997).

Cello has alleged that Storey committed a tortious act outside the state ("cybersquatting" on "cello.com") that caused injury to Cello within the state (diluting Cello's registered trademark "Cello"). *See Panavision,* 141 F.3d at 1321 (trademark dilution case is "akin to a tort case"). In addition, Storey certainly expected, or reasonably should have expected, his actions to have consequence in New York. He was

aware, before he registered "cello.com," of the existence of Cello and he was aware that Cello was in the audio business. Indeed, it is apparent that he was planning on trying to market the name when he registered it, and he surely knew, or should have known, that any such efforts would have an impact in New York. Within days after registering the name, he telephoned Cello in New York and sent an e-mail to Cornell in New York in an effort to sell the domain name.[2]

Finally, although the record is less clear in this respect, I also conclude that Storey "derives substantial revenue from interstate or international commerce." He had a website offering domain names for sale and he in fact sold two domain names. He has also sold equipment to customers in New York (albeit after the filing of this lawsuit). Although he was somewhat evasive at his deposition, the only source of income that he identified was his "current business." (Storey Tr. at 20–24). He described his current business, Audio Online, as a company that "seeks to promote sales *internationally* through the internet." (Storey Decl. ¶ 3) (emphasis added). *Cf. Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 29 (2d Cir.1997) (holding that owner of a Missouri nightclub that operated a website was not subject to long-arm jurisdiction in New York under N.Y.C.P.L.R. § 302(a)(3)(ii) because the nightclub was "unquestionably a local operation" that did not derive substantial revenues from interstate commerce).

██ I also conclude that the exercise of personal jurisdiction over Storey would not violate the Due Process Clause of the Constitution. *See Metropolitan Life Ins. Co.*

---

**2.** *See CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1264 (6th Cir.1996) (holding that a Texas resident who had advertised his product via the Internet was subject to personal jurisdiction in Ohio because he had taken direct "actions that created a connection with Ohio"); *American Network, Inc. v. Access America / Connect Atlanta,* 975 F.Supp. 494, 498 (S.D.N.Y.1997) (holding that personal jurisdiction is proper where an internet business

made tangible manifestations to reach a New York market); *Jones v. LaBofa,* No. 94 Civ. 1477, 1997 WL 642468, at *4 (N.D.N.Y. Oct. 15, 1997) (holding defendant chair manufacturer should have reasonably expected its act to have consequences in New York because defendants were aware that plaintiff had a showroom in New York and that people in New York would use its chairs).

*v. Robertson–Ceco,* 84 F.3d 560, 567 (2d Cir.1996); *American Network, Inc. v. Access Am./Connect Atlanta, Inc.,* 975 F.Supp. 494, 498–500 (S.D.N.Y.1997).

Storey purposefully availed himself of the benefits of doing business in New York. He telephoned Cello twice and sent an e-mail to Cornell, and thus he "reached out" and "originated" contacts with New York. *CompuServe,* 89 F.3d at 1266 (holding that a Texas internet user was subject to personal jurisdiction in Ohio because he had "reached out" and "originated and maintained" contact in Ohio by advertising and sending his software through the service in Ohio). He offered numerous domain names, including "cello.com," on a website that was open to everyone, including citizens of New York. This suit arises out of or is related to these contacts. He sold audio equipment online in what he describes himself as an effort "to promote sales internationally through the internet." Under all these circumstances, he certainly should have anticipated being haled into court here in New York.

In *Panavision,* a case involving similar facts, the Ninth Circuit found that the district court properly exercised personal jurisdiction over a non-domiciliary accused of registering the trademark of another as a domain name. The court acknowledged that "simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to a jurisdiction in another." *See Panavision,* 141 F.3d at 1322. The court went on to hold, however, that a defendant who "engaged in a scheme to register [plaintiff's] trademarks as his domain names for the purpose of extorting money from [plaintiff]" was subject to personal jurisdiction in the plaintiff's state. *Id.* If Cello's allegations are true, this is precisely the situation before the Court in this case. *See also Quokka Sports, Inc. v. Cup Int'l Ltd.,* No. C–99–5076, 1999 U.S. LEXIS 21000, at *10–23 (N.D.Cal. Dec. 13, 1999) (exercising personal jurisdiction over New Zealand defendants who operated a website under domain name "americascup.com," where defendants "purposely availed" themselves of benefits of conducting activities in United States and targeted U.S. market by "purposefully interject[ing] their website into the California and United States markets"); *Hasbro, Inc. v. Clue Computing, Inc.,* 994 F.Supp. 34 (D.Mass. 1997) (exercising personal jurisdiction over Colorado corporation that operated a website, "clue.com," that allegedly diluted trademark of Massachusetts company, where the website was targeted to reach a national audience, the website was accessible to Massachusetts residents, the company listed a Massachusetts company as a client, and the company represented that its employees would travel anywhere).

Accordingly, I hold that this Court may exercise personal jurisdiction over defendants.

## C. *The Merits*

### 1. *The FTDA*

The FTDA provides in relevant part:

The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark.

15 U.S.C. § 1125(c)(1).

"Dilution" is defined as:

[T]he lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—(1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception.

15 U.S.C. § 1127.

The Second Circuit has held that under the FTDA there are:

five necessary elements to a claim of dilution: (1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark.

*Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 215 (2d Cir.1999); *accord OBH, Inc. v. Spotlight Mag., Inc.*, 86 F.Supp.2d 176, 191 (W.D.N.Y. 2000).

The FTDA protects marks that are "both truly distinctive and famous, and therefore most likely to be adversely affected by dilution." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 876 (9th Cir.1999) (quoting S.Rep. No. 515, 100th Cong., 2d Sess. 42 (1988)). A mark is famous for purposes of the FTDA only if it is "truly prominent and renowned." *Id.* at 875 (quoting *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 46 (1st Cir.1998) (quoting 3 J. Thomas McCarthy, *Trademarks & Unfair Competition* § 24.91 (4th Ed.1996 & Supp.1998))).

### 2. The ACPA

The ACPA was passed in part "to remedy the perceived shortcomings of applying the FTDA in cybersquatting cases." *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 495 (2d Cir. 2000). The ACPA provides:

A person shall be liable in a civil action by the owner of a mark, ... if, without regard to the goods or services of the parties, that person—

(i) has a bad faith intent to profit from that mark, ... and

(ii) registers, traffics in, or uses a domain name that—

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or con-

fusingly similar to or dilutive of that mark.

15 U.S.C. § 1125(d)(1)(A).

The statute therefore distinguishes between a "distinctive" mark and a "famous" mark. Liability is imposed with respect to a "distinctive" mark if the domain name is "identical or confusingly similar." *Id.* § 1125(d)(1)(A)(ii)(I). Liability is imposed with respect to a "famous" mark if the domain name is "identical or confusingly similar to or *dilutive* of that mark." *Id.* § 1125(d)(1)(A)(ii)(II) (emphasis added).

The ACPA applies to a case whether the domain name was "registered before, on, or after the date of [its] enactment." *Sporty's*, 202 F.3d 489, 495 (quoting Pub.L. No. 106–113, 113 Stat. 1501 (1999)). In *Sporty's*, the Second Circuit applied the ACPA to the case even though the ACPA did not become law until after the district court's decision (which was based on the FTDA) was appealed. 202 F.3d 489, 496. In view of the Second Circuit's decision in *Sporty's*, it is clear the ACPA should be applied in the instant case as well.

### 3. Application

I hold that genuine issues of material fact exist to be tried both as to Cello's claim under the FTDA and as to its proposed claim under the ACPA. *See Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir.1999) (summary judgment is generally disfavored in trademark disputes because of the "intensely factual nature of trademark disputes") (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 n. 5 (9th Cir.1985)). Some of the factual issues overlap, and thus I discuss the two claims together.

### a. Famousness

A genuine issue of fact exists as to whether the mark "Cello" is "famous" within the meaning of the FTDA and ACPA. *See* 15 U.S.C. § 1125(c)(1)(A)-(H)

(listing eight non-exclusive considerations for famousness inquiry under FTDA).

Although Cello has presented evidence that the "Cello" mark is "famous" in the "high-end" stereo equipment market, the number of purchasers who can afford a stereo system that sells for $20,000 to $500,000 or more is undoubtedly quite limited. Moreover, as discussed further below, "cello" is a common noun that is widely used by third parties. *See Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 878 (9th Cir.1999). A reasonable factfinder could undoubtedly conclude that the "Cello" mark is not "truly prominent and renowned."

**b.  *Distinctiveness***

■ Distinctiveness "is a completely different concept from fame"; a mark may be distinctive even though its "fame is nonexistent" and likewise "even a famous mark may be so ordinary ... as to be notable for its lack of distinctiveness." *Sporty's*, 202 F.3d 489, 496. Here, a genuine issue of fact also exists as to whether the "Cello" mark is "distinctive." *See Avery Dennison*, 189 F.3d at 876 (determination of "distinctiveness" is a "difficult empirical inquiry").

Storey has presented evidence that the mark "Cello," alone or in combination, has been registered some twenty times, including by numerous companies other than Cello, and that dozens of companies throughout the country use "Cello" in their name. *See Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 625 (6th Cir.1998) (evidence of third-party use of registered mark may overcome the presumption of a strong mark). Where a mark consists of a common word (such as "cello") and co-exists with widespread third-party use, the Second Circuit has held that the mark is a weak one. *See Plus Prods. v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1006 (2d Cir.1983) (holding that even a suggestive mark can be found to be a weak mark if it "lack[s] originality and uniqueness" and there is extensive

third-party use); *Hasbro, Inc. v. Clue Computing, Inc.*, 66 F.Supp.2d 117, 131 (D.Mass.1999) (fact that "clue" was a "common word with a variety of meanings" weighed against findings of distinctiveness and famousness). Hence, a reasonable factfinder could conclude that the mark "cello" is not distinctive.

**c.  *Dilution***

■ A genuine issue of fact also exists as to whether Storey's registration of the domain name "cello.com" causes "dilution of the distinctive quality of the senior mark." *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 215 (2d Cir.1999). A reasonable factfinder could conclude that Storey's use of "cello.com" in his business selling "vintage audio equipment" over the Internet from his home does not dilute Cello's use of its mark in its business selling "high-end" audio systems that cost from $20,000 to $500,000 or more. Cello's customers and prospective customers are sophisticated consumers who, one could reasonably argue, are not likely to be confused. Moreover, Cello and Storey clearly do not compete for the same consumers. *Cf. OBH, Inc. v. Spotlight Mag., Inc.*, 86 F.Supp.2d 176, 195 (W.D.N.Y. 2000) ("competitive proximity between services favors finding of dilution").

**d.  *Intent***

■ A critical issue under the ACPA is intent, for the statute imposes liability only on a person who registers a domain name with "a bad faith intent to profit from that mark." 15 U.S.C. § 1125(d)(1)(A)(i). The ACPA lists nine non-exclusive factors to be considered in determining whether a defendant has acted with "a bad faith intent to profit." 15 U.S.C. § 1125(d)(1)(B)(i). These include, for example, whether the defendant has any intellectual property rights in the domain name, the defendant's prior use, if any, of the domain name, the defendant's intent, if any, to divert consumers from the plaintiff, whether the defendant offered to sell the domain name

without having used or intended to use the domain name in a bona fide business and whether the defendant had engaged in a pattern of such conduct, and whether the defendant had registered multiple domain names identical or confusingly similar to other famous marks. *Id.*

Here, Cello has presented evidence from which a reasonable factfinder could conclude that Storey acted with a "bad faith intent to profit." For example, he had no proprietary rights to the "cello" mark when he registered "cello.com," he had not previously used it, and he had engaged in a pattern of registering domain names that could be of interest to others and then trying to sell them.

At the same time, however, Storey has presented evidence that he did not act with a "bad faith intent to profit." He has submitted evidence that he registered "cello.com" in 1997 when he attempted to register the names of approximately twenty musical instruments as domain names, including "guitar.com," "drums.com," and "violin.com." (Storey Decl. ¶ 5). Moreover, although he clearly acted at least in part with an intent to profit, it is not clear that he acted with "bad faith." A reasonable factfinder could conclude that he did not act with an intent to "blackmail" or "extort" Cello, as Cello suggests. Rather, Storey attempted to register as domain names some twenty common nouns—names of musical instruments.

A reasonable factfinder could conclude that Storey was not trying to extort a particular (or any) trademark holder. This was not, for example, a situation where a cybersquatter registered "apple-computer.com" and then tried to extort Apple Computer into paying him money to release the domain name. Rather, the instant case is more akin to the situation where a person registers "apple.com" and then offers it to a number of parties that might be interested in the domain name. In fact, Storey approached at least nine other companies or individuals to offer them "cello.com." Significantly, the ACPA

specifically precludes a finding of bad faith where a domain name holder reasonably believes that the registration of the domain name was a "fair use" or "otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). Because "cello" is a common noun, a genuine issue of material fact exists as to whether Storey had reasonable grounds to believe that the use of "cello.com" was a "fair use" or "otherwise lawful."

### e. *Equity*

■ Finally, the FTDA provides that the owner of a famous mark is entitled to an injunction only "subject to the principles of equity." 15 U.S.C. § 1125(c)(1). Hence, "[t]he statute makes equitable considerations a part of the claim itself, rather than merely a consideration affecting the remedy." *Hasbro, Inc.*, 66 F.Supp.2d at 136. Factual issues certainly exist with respect to the question of whether Cello is entitled, as an equitable matter, to an injunction.

Cello argues that it is entitled to the domain name "cello.com" and it asks this Court to enter a judgment awarding the domain name to it. Under the ACPA, the remedies available to a prevailing plaintiff is limited to "a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(2)(D)(i). Even assuming, however, that Cello has proven or could prove that defendants have diluted its "Cello" trademark, or that it has a greater entitlement to the domain name than defendants, Cello has not demonstrated why it has any greater right to "cello.com" than the other dozens of companies that have registered "Cello," alone or in combination, or that have been using "Cello" in their company name. In view of the fact that "cello" is a common noun and that many companies use "cello" in their name, some perhaps longer than Cello has been using the mark, the Court is not prepared at this juncture, on cross-motions for summary judgment,

to award the domain name "cello.com" to plaintiffs.

Accordingly, I hold that genuine issues of fact exist for trial.

### CONCLUSION

The parties' cross-motions for summary judgment are denied on the merits. Storey's motion for summary judgment is also denied to the extent he argues that this Court lacks personal jurisdiction over him.

Cello is hereby granted leave to amend its complaint to add a cause of action under the ACPA. Cello shall serve and file its amended complaint within ten business days hereof. Defendants shall serve and file their answer to the amended complaint within ten business days thereafter. The parties shall submit a joint pretrial order and proposed findings of fact and conclusions of law on or before May 15, 2000.

SO ORDERED.