**Lawrence STOREY, Plaintiff,**

v.

**CELLO HOLDINGS, L.L.C. and Cello Music & Film Systems, Inc., Defendants.**

**No. 01 CIV. 208(DC).**

United States District Court, S.D. New York.

Jan. 23, 2002.

See also 89 F.Supp.2d 464.

357

Engel & McCarney by James G. McCarney, Esq., New York City, for Plaintiff.

Herrick, Feinstein LLP, By Scott E. Mollen, Esq., John P. Sheridan, Esq., New York City, for Defendants.

## OPINION

CHIN, District Judge.

In 1997, Lawrence Storey registered the Internet domain name "cello.com" with Network Solutions, Inc. ("NSI"), an Internet domain name registration company. Shortly thereafter, Cello Holdings, L.L.C. and Cello Music & Film Systems, Inc. (together, "Cello") sued Storey in this Court asserting rights to the "cello .com" name and seeking an injunction requiring Storey to transfer the NSI registration of "cello.com" to Cello. On the eve of trial, however, Cello advised the Court that the case had been settled. As a consequence, the Court issued an order discontinuing the case "with prejudice," subject to reinstatement within 30 days.

Neither side requested reinstatement. Hence, the dismissal with prejudice became final. Nonetheless, just days later, Cello filed an arbitration proceeding against Storey for the same relief it had sought in the discontinued action. Storey argued in the arbitration proceeding that the dismissal with prejudice of the prior lawsuit barred Cello's claims. The panel rejected Storey's *res judicata* argument, ruled in favor of Cello on the merits, and

ordered Storey to transfer the registration of the domain name "cello.com" to Cello.

The parties thereafter brought separate lawsuits. Cello sued Storey in state court in Virginia for an order confirming the arbitration award. Storey brought this action, arguing that Cello was barred from relitigating its claims with respect to "cello.com" because the prior action was dismissed "with prejudice." Before this Court are the parties' cross-motions for summary judgment pursuant to Fed. R.Civ.P. 56 and Storey's motion for sanctions pursuant to Fed.R.Civ.P. 11.

Cello's motion is denied and Storey's motions are granted. The discontinuance "with prejudice" operated as an adjudication on the merits in Storey's favor and Cello was therefore barred from asserting future claims against Storey based upon the same causes of action that were or could have been asserted in the first case. By discontinuing its claims "with prejudice" on the eve of trial, Cello could not then turn around, as it did, to assert the same claims in an arbitration proceeding. Moreover, in its answer and other submissions in this case, Cello made a number of representations and arguments that have no reasonable basis in law or fact. Accordingly, sanctions will be imposed.

## STATEMENT OF THE CASE

### A. The Facts

The underlying facts are set forth in detail in the Court's memorandum decision in the first action. *See Cello Holdings, L.L.C. v. Lawrence–Dahl Cos.*, 89 F.Supp.2d 464 (S.D.N.Y.2000). The facts relevant to the issues presently before the Court are not in dispute and are as follows:

### 1. Background

Cello and its predecessors have been selling "high end" audio equipment under the "Cello" name since 1985. Cello regis-

tered the trademark "Cello" for use in the audio equipment business in 1995. In 1997, Storey attempted to register with NSI some 20 domain names consisting of single noun names of musical instruments, such as "guitar.com," "drums.com," and "violin.com." All of the names, with the exception of "cello.com," were already registered. Storey registered "cello.com."

### 2. The First Action

On October 16, 1997, Cello commenced an action in this Court against Storey (the "First Action") under the Federal Trademark Dilution Act (the "FTDA"), 15 U.S.C. § 1125(c), and § 360–1 of the New York General Business Law. N.Y. Gen. Bus. L. § 360–1 (McKinney Supp.1999). Cello contended that Storey was diluting its trademark "Cello" by registering and trying to sell the domain name "cello.com." Cello contended that Storey was a "cybersquatter" who had no "productive use" in mind for the domain name when he registered it. Rather, Cello contended that Storey registered the name solely for the purpose of "blackmail[ing]" someone into buying it. Storey, on the other hand, contended that Cello failed to demonstrate that the "Cello" mark was distinctive or famous, and argued that "cello" was a common noun used in the names of dozens of businesses. Storey, a California resident, also contended that the Court lacked personal jurisdiction over him.

After discovery, the parties filed cross-motions for summary judgment. While the motions were pending, the Anticybersquatting Consumer Protection Act (the "ACPA") was signed into law. Pub.L. No. 106–113, 113 Stat. 1501 (1999) (codified at 15 U.S.C. § 1125(d)). The Court denied the parties' cross-motions and granted Cello leave to amend its complaint to add a cause of action under the ACPA. See Cello Holdings, L.L.C. v. Lawrence–Dahl Cos., 89 F.Supp.2d 464 (S.D.N.Y.2000).

In August 2000, shortly before the First Action was scheduled to be tried, Cello's counsel advised the Court that the case had been "settled." In fact, as the Court has now learned, the First Action had not actually "settled," but instead Cello had merely decided to discontinue its claims. The parties did not enter into a settlement agreement. Because the Court was advised that the case had been "settled," the Court issued a 30–day order on August 15, 2000, discontinuing the First Action "with prejudice" but subject to reinstatement within 30 days. The trial was canceled. Neither side requested reinstatement and the dismissal "with prejudice" therefore became final on or about September 14, 2000.

### 3. Storey's Letter

On September 25, 2000, Storey's counsel sent a letter to "Cello Limited" (the "September 25th Letter") stating that Storey had successfully concluded trademark litigation in which Storey's "ownership interest" in "cello.com" had been "challenged" by Cello. The September 25th Letter further stated that Storey was offering the domain name for sale. (Def. Mem. at Ex. 1).

### 4. The Arbitration Proceedings

On October 10, 2000, Cello[1] filed an arbitration complaint with eResolution, the dispute resolution agency designated by Storey's service agreement with NSI. (Def. Mem. at Exs. 2, 3).[2] In the arbitration

---

1. The complainant was listed solely as "Cello Holdings, LLC."

2. The NSI service agreement provided that registrants were bound by NSI's "current domain name dispute policy." (Def. Mem. at Ex. 2). The parties agree that in or about October 2000, the dispute policy in effect was the Uniform Domain Name Dispute Resolution Policy (the "UDRP") adopted by the Internet Corporation for Assigned Names and

complaint, Cello asserted that "cello.com" was identical to its registered trademark "Cello" after removing the ".com" and was confusingly similar to "Cello Music & Film Systems." (*Id.* at Ex. 3, p. 6). Cello also alleged that Storey had no rights in the "cello.com" name because of admissions made in his deposition in the First Action. It also contended that Storey obtained the domain name in bad faith.

The eResolution complaint form contained a space for a description of "any other legal proceedings that have been commenced or terminated in connection with or relating to the contested domain name(s)." In this section, Cello wrote:

> This issue began with a Complaint filed 16 Oct. 1997 in the United States District Court for the Southern District of New York, 97 Civ. 7677. The case has dragged on for almost three years without resolution and with significant expense. *Cello Holdings LLC voluntarily dismissed the case last month so as to avail itself of this dispute resolution policy which was not available at the time of the 1997 filing,* thereby saving significant time and expense over the continued litigation.

(*Id.* at Ex. 3, p. 7) (emphasis added).[3] Cello's complaint made no mention of the September 25th Letter and did not allege that Storey had engaged in any wrongful conduct following the dismissal of the First Action.

Storey submitted a response on the form provided by eResolution. His principal argument was that the arbitration proceedings were barred by the discontinuance with prejudice of the First Action. Storey wrote:

> On October 16, 1997, Cello Holdings, LLC and Cello Music and Film Systems, Inc. filed an identical complaint against Lawrence–Dahl Companies and Lawrence Storey in the United States District for the Southern District of New York in an action entitled *Cello Holdings, L.L.C. v. Lawrence Dahl Companies....* The action was discontinued with prejudice by Order dated August 15, 2000, which, as noted above, acts as an adjudication on the merits of complainant's claims.

(*Id.* at Ex. 5, pp. 3–4). Storey also wrote:

> This proceeding is barred by the previous discontinuance with prejudice of complainant's identical claims in [the

Numbers (the "ICANN") on October 24, 1999. The UDRP contains what is described as a "mandatory administrative" arbitration procedure for resolving disputes. (Def. Mem. at Ex. 8, ¶ 4). The UDRP makes it clear, however, that notwithstanding these procedures, a registrant or a complainant may submit the dispute "to a court of competent jurisdiction for *independent* resolution" before, during, or after the arbitration proceedings. (*Id.* at ¶ 4(k)) (emphasis added). The UDRP also provides that if an arbitration panel orders the transfer of a domain name registration, the service provider (here, NSI) will take no action to transfer the name as long as the registrant seeks judicial relief within ten business days following the date the provider is informed of the panel's decision. (*Id.*). The UDRP and applicable rules also provide that with respect to domain name disputes, regis-

trants could bring suit in any "court of competent jurisdiction," which "[i]n general" meant the jurisdiction where ICANN or the registrant was located or where the complainant had "submitted" itself to jurisdiction. (Def. Mem. at Exs. 8, 9).

**3.** This representation was inconsistent with prior statements made by Cello. First, Cello's counsel had advised the Court in the First Action that the case had settled. Second, Cello's counsel advised Storey's counsel during the First Action that Cello did not wish to pursue its claims because it was in financial distress. (McCarney Decl. ¶ 3). This representation is also contradicted by Cello's current representation that it did not learn of the arbitration mechanism until September 4, 2000. (Adams Decl. at ¶ 8).

prior action] ... Inasmuch as a discontinuance with prejudice constitutes 'a final disposition of the claims on the merits,' this proceeding is barred by the doctrine of *res judicata*....

Complainant's claim to the "cello.com" domain name is in any event wholly lacking in merit and should be rejected *even were this tribunal empowered to reconsider this issue—which it is not.* (*Id.*, Ex. 5, pp. 7–8) (emphasis added). Storey did address the merits, but he did so merely as an alternative argument to his *res judicata* defense, and he did so merely by summarizing his arguments in the First Action and this Court's ruling on the summary judgment motions and attaching copies of the court papers.

On December 21, 2000, the eResolution panel issued a decision in favor of Cello. Noting that Storey had "responded to the Complaint and ha[d] freely participated in this arbitration" and that "voluminous material" had been submitted by the parties, the panel found for Cello. (Def. Mem. at Ex. 4, pp. 3, 10). In response to Storey's assertion that the arbitration was precluded by the dismissal of the First Action, the panel held that Storey's assertions "are at variance with this Tribunal's reading of the evidence he submitted and are expressly rejected. Furthermore, as Respondent has made no attempt to enjoin the actions of eResolution or this Tribunal, a claim that jurisdiction is absent or that Respondent has not consented to participate in this proceedings is likewise unpersuasive." (*Id.* at Ex. 4, p. 7). The panel then ordered that Storey transfer the registration of "cello.com" to Cello. (Def. Mem. at Ex. 4, p. 11).

### 5. *The Instant Action*

Storey filed the instant action on January 10, 2001. The complaint seeks a declaratory judgment that Storey's ownership and use of the domain name "cello.com" is not unlawful. The complaint seeks relief principally on the basis of the *res judicata* effect of the dismissal of the First Action, and it also seeks relief from the arbitration decision.

Represented by new counsel, Cello filed an answer that set forth certain denials and defenses.[4] Cello objected to "jurisdiction and venue," arguing that Cello Music and Film Systems, Inc. was not a participant in the arbitration proceedings and that Cello Holdings, LLC maintains no presence in New York. (Ans. at pp. 1–2). The answer also asserted the defense that Storey's claims were "barred by the doctrine of laches, estoppel, waiver and contractual limitation of actions," denying that Storey had complied with the ten-day limitation period for filing judicial challenges to the arbitration award. (*Id.* at p. 3, ¶ 15). The answer also alleged that Storey's claims were "barred by arbitration and award" and that Storey could not seek relief under "the federal statutory authority" because he was limited to the remedy provided in the arbitration policy. (*Id.* at p. 3). The answer also "denied that [Storey] objected to the jurisdiction of the arbitral tribunal." (*Id.* at ¶ 13). The answer also argued that the dismissal order "was entered pursuant to a settlement agreement, not as a determination on the merits and was without prejudice to the rights of Cello to assert ownership of the disputed domain name." (*Id.* at ¶ 11). Finally, the answer denied "that an actual case or controversy regarding ownership of the domain name 'cello.com' exists between the parties because the arbitral award is final and binding." (*Id.* at ¶ 16).

---

4. The answer was signed by Cello's current attorneys as well as by Robert K. Richardson, Esq., of Odin, Feldman & Pittleman, P.C., of Fairfax, Virginia.

### 6. *Cello's Motion to Confirm the Arbitration Award*

On February 28, 2001, Cello filed a motion to confirm the arbitration award in the Circuit Court of Fairfax County, Virginia. On May 9, 2001, the Circuit Court (Dennis J. Smith, J.) issued an order staying that action pending a resolution of the instant action. (Def. Mem. at Exs. 6, 7). Judge Smith wrote: "the United States District Court for the Southern District of New York is a more appropriate forum to hear and decide the merits of Mr. Storey's claim of *res judicata* as the previous suit was heard and resolved in that Court."

### 7. *Prior Proceedings in This Case*

On February 1, 2001, NSI filed a Registrar Certificate tendering control and authority over the "cello.com" domain name to this Court.

I conferenced this case on April 6, 2001. I encouraged the parties to discuss settlement, and I also raised the issue of whether Cello was barred from seeking the relief it obtained in the arbitration proceedings because of the *res judicata* effect of the dismissal with prejudice of the First Action. In a letter dated April 13, 2001 to the Court, Cello's counsel argued that the doctrine of *res judicata* did not apply because the arbitration proceeding was based on Storey's conduct *after* the dismissal of the First Action, *i.e.*, the September 25th Letter. On April 17, 2001, I issued an order in which I observed that "[o]n the face of it, it would appear that Cello's claims are barred by the doctrine of *res judicata.*"

The case did not settle. These motions followed. Cello did not withdraw its answer or defenses in response to Storey's Rule 11 motion.

### DISCUSSION

### A. *Res Judicata*

### 1. *Applicable Law*

The applicable principles are well settled. A dismissal with prejudice "has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action." *Samuels v. Northern Telecom, Inc.*, 942 F.2d 834, 836 (2d Cir.1991) (quotation and citation omitted). A dismissal with prejudice "constitutes a final judgment with the preclusive effect of *res judicata* not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986) (quotation and citation omitted).

These principles apply even where the merits are not actually litigated. In *Samuels*, for example, following a pretrial conference the parties entered into a stipulation withdrawing the action "with prejudice." The plaintiff had asserted an employment discrimination claim under 42 U.S.C. § 1981, but the claim was deficient. The complaint also referred to Title VII, but the Title VII claim was premature because the plaintiff had not yet obtained a right-to-sue letter from the EEOC. Inexplicably, the plaintiff did not reserve the right to re-file the Title VII claim, and instead the action was withdrawn "with prejudice." Thereafter, the plaintiff obtained a right-to-sue letter and filed a new action under Title VII. The district court held that plaintiff's claims were barred by the *res judicata* effect of the dismissal of the first action "with prejudice." The Second Circuit affirmed, even though the plaintiff apparently had a meritorious claim and had not intended to forfeit his Title VII claim. *Samuels*, 942 F.2d at 836–37. The Court noted that a

dismissal "with prejudice" "wipe[s] out all claims" that were or could have been asserted. *Id.* at 837.

### 2. *Application*

■ Here, because the dismissal in the first action was "with prejudice," Cello was precluded from initiating new proceedings to seek relief based on the same causes of action that were or could have been asserted in the First Action. The claims asserted by Cello in the arbitration proceedings were identical to the claims that were discontinued "with prejudice" in the First Action. The relief Cello sought in the arbitration proceeding was precisely the relief Cello had sought in the First Action—transfer of the registration to the domain name "cello.com" from Storey to Cello—for precisely the same reasons—the alleged confusion between Cello's mark "Cello" and "cello.com." As a consequence, Cello was barred from reasserting its claims in the arbitration proceedings.

As in *Samuels*, the merits of the claims were never actually litigated here. But this case presents even more compelling circumstances for the application of the *res judicata* bar. The First Action had been litigated for some three years, the parties had briefed and the Court had decided summary judgment motions, and the case was scheduled for trial. The Court set aside time for the trial, but was advised at virtually the last minute that the case had been "settled." After this expenditure of resources by the parties and the Court, a dismissal without prejudice would have made no sense.

Moreover, the First Action was dismissed subject to reinstatement within 30 days. Hence, Cello was put on notice that the dismissal would be "with prejudice," and it was given the opportunity to request reinstatement. If Cello had objected to a dismissal "with prejudice" or if it had not understood what such a dismissal

meant, it could have requested reinstatement. It did not. Consequently, it cannot be heard to complain now. *See Hanley v. Cafe des Artistes*, No. 97 Civ. 9360(DC), 1999 WL 688426, *4 (S.D.N.Y. Sept. 3, 1999) (holding that dismissal of claims with prejudice by 30–day order was "adjudication on the merits . . . sufficient by itself to invoke the doctrine of *res judicata* ").

### 3. *Cello's Arguments*

Cello makes three arguments in an effort to overcome the *res judicata* bar. First, Cello argues that it brought the arbitration proceedings because Storey engaged in a "new act of cybersquatting" when his attorneys wrote the September 25th Letter. Second, Cello argues that because Storey participated in the arbitration "on the merits" he cannot now attack the award. Third, Cello argues that this Court is not the proper forum for this proceeding. These arguments are rejected.

### a) *The September 25th Letter*

■ Cello's contention that it filed the arbitration complaint in response to the September 25th Letter is plainly false. The arbitration complaint makes no mention whatsoever of the September 25th Letter. Likewise, Cello's answer in this case makes no mention of the September 25th Letter. More significantly, the arbitration complaint explains that Cello "dismissed the [First Action] so as to avail itself of the dispute resolution policy which was not available at the time of the 1997 filing, thereby saving significant time and expense over the continued litigation." Having thus told the arbitration panel that it had discontinued the First Action to take advantage of the less expensive arbitration process, Cello now represents to this Court that it commenced the arbitra-

tion proceeding because Storey committed a new act of "cybersquatting."

The September 25th Letter was not an act of "cybersquatting" in any event. The fact is that Storey did prevail in the First Action. Cello filed suit, asserting claims to the domain name. The claims were dismissed "with prejudice." Hence, Cello failed to achieve the relief it had sought and Storey retained his registration of the domain name.

Cello cites several cases where judgments entered "with prejudice" were held not to have preclusive effect on later claims. None of the cases, however, remotely resembles this case. Here, the allegedly "new" act of "cybersquatting" occurred less than a month after the case was dismissed and was not a new transaction at all. Rather, the September 25th Letter was simply a reassertion by Storey of his rights to the domain name that had been confirmed by the dismissal of the First Action "with prejudice."

In the cases cited by Cello, substantial time had elapsed between the dismissal of the first cases and the filing of the later cases; new transactions and events occurred in the interim. In *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955), for example, a judgment dismissing the first suit "with prejudice" was entered in 1943. Petitioners brought another action in 1949, six years later, for "new antitrust violations . . . not present in the former action." 349 U.S. at 328, 75 S.Ct. 865. Similarly, in *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450 (2d Cir.1996), the Second Circuit held that the settlement of an S.E.C. ad-

ministrative proceeding in 1984 involving First Jersey's trades in certain securities during the 1970's did not preclude the S.E.C. from bringing another action in 1985 based on First Jersey's trades in different securities during the 1980's. *Id.* at 1458.[5]

The Second Circuit has held that "as a matter of logic, when the second action concerns a transaction occurring after the commencement of the prior litigation, claim preclusion generally does not come into play." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir.1997). In this case, however, there was no such transaction. The September 25th Letter was not a new transaction creating a new claim, for Cello had already given up any claim to rights in the domain name in question.

### b) *Plaintiff's Participation in the Arbitration*

 In its motion papers, Cello repeatedly contends that Storey "voluntarily participated" in the arbitration process. (Def. Mem. at 7, 9, 16). Cello also contends that Storey "defended on the merits." (Def. Mem. at 5). These assertions are misleading.

Cello ignores the fact that Storey's principal defense in the arbitration proceeding was his assertion of the *res judicata* bar. Storey vigorously objected to the arbitration proceeding, arguing that "[t]his proceeding is barred by the previous discontinuance with prejudice of complainant's identical claims in" the First Action. (Def. Mem. at Ex. 5, p. 7). Although Storey did

---

5. Likewise, Cello's reliance on *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86 (2d Cir.1997), and *Maharaj v. Bankamerica Corp.*, 128 F.3d 94 (2d Cir.1997), is misplaced, for those cases are similarly inapposite. Cello's citation to *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001), is also of little help. Although the Court did observe that "not all judgments denominated to be 'on the merits' or 'with prejudice' are entitled to claim-preclusive effect," it was careful to limit that observation. *Id.* at 501, 121 S.Ct. 1021.

file a response in the eResolution proceedings, he did not participate beyond arguing that Cello's claims were barred by the discontinuance of the First Action with prejudice and relying on arguments he made and papers he submitted in the First Action. Storey never appeared, in person, by telephone, or by counsel; there was no hearing or trial or oral argument; and Storey submitted no papers or evidence beyond the response form and the copies of the court papers from the First Action.

While it is true that Storey did argue the merits in his arbitration filing, clearly he did so as an alternative to his *res judicata* argument and he did so by relying on the arguments and submissions he had made in the First Action. By doing so, Storey certainly did not waive his *res judicata* defense.

### c) *This Court as the Forum*

■ Finally, Cello argues that this action must be dismissed because this Court is not the proper forum to resolve this dispute. The argument is meritless.

This Court is clearly the proper forum for the resolution of this dispute, as Judge Smith of the Fairfax County Circuit Court quickly recognized when he stayed the Virginia action pending resolution of this case. The principal dispute is whether Cello's claims asserted in the arbitration proceedings were barred by an order of this Court. This Court should decide that question.

Cello's argument that this Court is not the proper forum for this action is also belied by the fact that Cello—not Storey—brought the First Action in this Court. Cello sought to invoke this Court's jurisdiction in the first place.

Finally, the UDRP itself permits suit to be brought in any "court of competent jurisdiction." This would include, "[i]n general," the jurisdiction where ICANN or the registrant was located or a jurisdiction

to "which the complainant has submitted." (Def. Mem. at Exs. 8, 9). Here, Cello had submitted itself to this Court's jurisdiction in connection with the domain name, and even NSI recognized this Court as a competent jurisdiction by tendering the domain name to this Court's authority and control.

### B. *Rule 11*

#### 1. *Applicable Law*

■ In determining whether to impose sanctions on an unsuccessful litigant and its attorney, a court bears a "heavy responsibility," for the imposition of sanctions not only runs contrary to the general American rule that each party should bear its own legal expenses, win or lose, it imposes a financial burden on both the litigant and its lawyer and, more importantly, "carries with it condemnation of [the lawyer's] professional conduct." *Tedeschi v. Smith Barney, Harris Upham & Co.*, 579 F.Supp. 657, 661 (S.D.N.Y.1984) (Weinfeld, J.), *aff'd*, 757 F.2d 465 (2d Cir.), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). Consequently, the Second Circuit has repeatedly warned that "sanctions must be imposed with caution." *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1259 (2d Cir.1996) (Rule 11); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (court's inherent power); *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir.1994) (Rule 11). Moreover, sanctions may not be imposed without notice and an opportunity to be heard. *Martens v. Thomann*, 273 F.3d 159, 175 (2d Cir. 2001).

Storey seeks sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Rule 11 requires an attorney to sign every pleading or other paper filed with the court. The signature "certifies to the court that the signer has read the docu-

ment, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 542, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991); *accord W.K. Webster & Co. v. American President Lines, Ltd.,* 32 F.3d 665, 670 (2d Cir.1994). Specifically, by signing a pleading, the attorney certifies that:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b). Rule 11 thus "seeks to discourage dilatory and abusive litigation tactics and eliminat[e] frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process." *Paganucci v. City of New York,* 993 F.2d 310, 312 (2d Cir.1993) (citing *McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17, 21 (2d Cir.1990)).

An attorney violates Rule 11 when he or she signs a pleading that contains a claim that is objectively unreasonable, even when the attorney does not act in bad faith. *MacDraw,* 73 F.3d at 1257–58; *see also Margo v. Weiss,* 213 F.3d 55,

65 (2d Cir.2000) ("standard for triggering the award of fees under Rule 11 is objective unreasonableness"); *Eavzan v. Polo Ralph Lauren Corp.,* 40 F.Supp.2d 147, 153 (S.D.N.Y.1998) ("The applicable test for sanctioning a lawyer is whether a reasonably competent attorney would have acted similarly."). Rule 11 may also be the basis for imposing sanctions on a party, except that monetary sanctions may not be imposed on a party for a violation of Rule 11(b)(2). *See* Fed.R.Civ.P. 11(c)(2)(A) & Advisory Comm. Notes to 1993 Amendments; *Salovaara v. Eckert,* 222 F.3d 19, 34 n. 11 (2d Cir.2000). Where sanctionable conduct is a "coordinated effort," joint and several liability may be appropriate. *Estate of Calloway v. Marvel Entertainment Group,* 9 F.3d 237, 239–40 (2d Cir.1993), *cert. denied,* 511 U.S. 1081, 114 S.Ct. 1829, 128 L.Ed.2d 459 (1994).

Rule 11 includes a 21–day "safe harbor" provision, which gives a party an opportunity to avoid sanctions by withdrawing the purportedly offending pleading or other filing within 21 days after the filing of a Rule 11 motion. Fed.R.Civ.P. 11(c)(1)(A). Rule 11 also provides that "[a]bsent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees." Fed.R.Civ.P. 11(c)(1)(A).

Under Rule 11, monetary sanctions are to be limited to "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(2). In "unusual circumstances," however, a court "may find deterrence ineffective unless reasonable attorneys' fees and other expenses are paid to the party moving for sanctions." *See Nyitray v. Johnson,* No. 96 Civ. 6150(MBM), 1998 WL 67651, at *14 (S.D.N.Y.1998) (citing Advisory Committee Rules). Unusual circumstances may exist where there is a "flagrant lack of merit" to

a party's claims and the likelihood of an improper motive for the filing of a lawsuit. *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 661 (S.D.N.Y.1996); *accord Gray v. Millea,* 892 F.Supp. 432, 438 (N.D.N.Y.1995) ("unusual circumstances" existed for purposes of Rule 11 where defendants had made good faith request that plaintiff withdraw his claim before motions to avoid sanctions, and defendants were required to incur "unnecessary expense" in motion for summary judgment).

### 2. *Application*

Here, Storey served his motion for sanctions on or about May 16, 2001, asking for Rule 11 sanctions against Cello and its counsel if Cello's answer was not withdrawn. Storey argued that Cello's answer violated all four certification requirements of Rule 11. Cello did not withdraw the answer. Storey therefore filed his motion on June 14, 2001. Cello filed opposition papers. Hence, Cello and its attorneys have had both notice and an opportunity to be heard.

I conclude that Cello and its attorneys have violated Rule 11 in the following respects. First, certain of Cello's factual assertions and denials do not have evidentiary support or are not warranted on the evidence. Second, Cello's legal arguments and defenses are not objectively reasonable and have no reasonable basis in law or fact. Third, Cello's answer and defenses were asserted for improper purposes: to harass Storey and to cause unnecessary delay or needless increase in the cost of litigation.

#### a) *The Factual Assertions and Denials*

Certain of Cello's factual assertions and denials do not have evidentiary support or are not warranted on the evidence. For example:

• Cello has represented to the Court that it filed the arbitration proceedings because Storey engaged in a "new act of cybersquatting" by sending the September 25th Letter. This factual assertion is not supported by the evidence and, indeed, the evidence demonstrates that the representation is false. Cello's arbitration complaint makes no mention of the September 25th Letter, and Cello specifically told the arbitrators that it "dismissed the [First Action] so as to avail itself of the dispute resolution policy which was not available at the time of the 1997 filing, thereby saving significant time and expense over the continued litigation." Likewise, Cello's answer in this case makes no mention of the September 25th Letter.

• The answer alleges that the dismissal order "was entered pursuant to a settlement agreement." That was not true. As Cello now writes in its memorandum of law in support of its motion for summary judgment: "the parties never agreed upon the terms of a settlement." (Def. Mem. at 3).

• The answer "denied that [Story] objected to the jurisdiction of the arbitral tribunal." This denial was not warranted on the evidence, for Storey's response in the arbitration proceeding specifically stated that "this tribunal [is not] empowered to reconsider the issue." Clearly, Storey's principal argument to the arbitration panel was that it was barred from hearing the dispute. Even the arbitration panel recognized that Storey had made "a claim that jurisdiction is absent." (Def. Mem. at Ex. 4, p. 7).

• The answer "denied that an actual case or controversy regarding ownership of the domain name 'cello.com' exists between the parties." This denial was not warranted by the evidence, for clearly there was an actual case or controversy between the parties over the domain name.

In fact, Cello had brought its own lawsuit in the Virginia state court for resolution of this "case or controversy."

- The answer alleged that the arbitration decision was "final and binding." This was not true as a factual matter, for the UDRP specifically permits a party to seek judicial relief both *before* and *after* any arbitration proceeding is commenced. Moreover, on its face the UDRP provides that the court may make an "independent resolution," suggesting that the judicial proceeding is *de novo*.

- The answer alleges that the dismissal order "was without prejudice to the rights of [Cello] to assert ownership of the disputed domain name." That was not true as a factual matter, as the dismissal order explicitly provided that the action was discontinued "with prejudice." The phrase "without prejudice" does not appear in the order.

- Cello's memorandum of law in support of its summary judgment motion states that the First Action "addressed only the prior use of the [domain] name." (Def. Mem. at 3). This assertion is false. Cello's complaint in the First Action also sought relief based on ongoing and future use of the domain name, and the complaint specifically sought an injunction ordering Storey to transfer the NSI registration of the domain name to Cello. (*See, e.g.,* Def. Mem., at Ex. 10, ¶¶ 61, 66, 68 & p. 10).

- Finally, Cello's assertion that Storey "voluntarily participated" in the arbitration proceedings to such an extent that he should be deemed to have waived his *res judicata* defense is both wrong and misleading. Although it is true that Storey argued the merits in the arbitration proceedings, he only did so as an alternative

to his *res judicata* defense and his arguments on the merits were limited to repeating the arguments and papers he had submitted in the First Action. Storey's "participation" did not include any appearances or testimony or oral argument or anything beyond his written submission.

### b) *Cello's Legal Arguments and Defenses*

Cello's legal arguments and defenses have no reasonable basis in law or fact. Existing law does not provide Cello with support, nor has Cello argued for the extension, modification, or reversal of existing law or the establishment of new law. Rather, the legal principles at issue are well settled; the facts simply do not support Cello's legal contentions. *See, e.g., Paganucci,* 993 F.2d at 312 (affirming award of attorneys' fees and costs as Rule 11 sanctions where claims were barred by *res judicata* and "attempt to revisit . . . is patently frivolous"); *Bartel Dental Books Co. v. Schultz,* 786 F.2d 486, 490 (2d Cir. 1986) (affirming award of attorneys' fees and costs as Rule 11 sanctions where plaintiffs' claims were barred by *res judicata* effect of prior actions); *Kahre–Richardes Family Found., Inc. v. Village of Baldwinsville,* 953 F.Supp. 39, 42 (N.D.N.Y.1997) (where "claims were clearly barred by the doctrine of *res judicata* " attorneys' fees were awarded as Rule 11 sanction). For example:

- The answer asserted laches and "contractual limitation of actions" defenses based on the ten-day provision in the arbitration policy. No good faith basis existed for these defenses. The ten business days ran from the date NSI was informed of the panel's decision.[6] As Cello's own exhibits

---

6. In its memorandum of law in support of its motion for summary judgment, Cello misstates the rule, stating that paragraph 4(k) of the UDRP "provides that a judicial appeal must be initiated within ten business days

following the Award." (Def. Mem. at 14). In fact, paragraph 4(k) provides that the ten business days run from the time NSI is "informed" of the arbitration decision.

show, NSI received notification of the decision on December 27, 2000 and NSI specifically advised both Cello and Storey that Storey had until January 11, 2001 to seek judicial relief. (Def. Mem., at Ex. 12, p. 8). Hence, when Storey filed this action on January 10, 2001, he clearly met the ten-day deadline—as Cello well knew and its counsel should have known.

- The answer raised jurisdiction and venue defenses. No reasonable basis existed for these defenses or the assertion that Cello Holdings maintained "no presence" in New York and that "sufficient contacts" with New York were "absent," for Cello itself had previously sought precisely the same relief from this Court in the First Action, thereby subjecting itself to this jurisdiction. In addition, in its complaint in the prior action, Cello alleged that Cello Music was a subsidiary of Cello Holdings and that Cello Music sold high-quality audio and video entertainment systems through a wholly-owned New York subsidiary. (Def. Mem., at Ex. 10, ¶¶ 3,4). In its complaint Cello further alleged that venue in this Court was proper because a "substantial part of the events giving rise to the claims in [the] action occurred in [the Southern District of New York]." (*Id.*, at Ex. 10, ¶ 16). The assertion in the answer in this action that Cello Music and Film Systems, Inc. was neither a "necessary nor proper party" was not reasonably grounded in law or fact because Cello Music and Film Systems, Inc. had been a party to the First Action and relief was sought on its behalf in the arbitration proceedings. (*See* Def. Mem., at Ex. 3, pp. 4, 5, 6).

- Cello's argument that Storey is precluded from seeking relief in this Court because he "voluntarily participated" in the arbitration proceedings is disingenuous. His principal argument was that the arbitration panel was "barred" from hearing the matter. He argued that the arbi-

tration "tribunal" was not "empowered to reconsider" Cello's claims. The argument that Storey was essentially estopped by this limited participation from seeking relief in this Court is not objectively reasonable.

- Cello's answer argued that the arbitration award was "final and binding." As noted above, this was incorrect as a factual matter, for the terms of the policy explicitly provide otherwise. Moreover, it is also clear that Cello's assertion is wrong as a matter of law, as reasonable inquiry would have quickly shown. The ACPA itself provides that a domain name registrant whose name has been suspended or transferred may file a "civil action to establish that the registration or use of the domain name by such registrant is not unlawful." 15 U.S.C. § 1114(2)(D)(v). In addition, the cases have held that domain name arbitration awards are not final and binding. *See, e.g., BroadBridge Media, L.L.C. v. Hypercd.com,* 106 F.Supp.2d 505, 509 (S.D.N.Y.2000) (parties to proceedings under UDRP do not forfeit right to go to court); *Weber–Stephen Prods. Co. v. Armitage Hardware & Building Supply, Inc.,* No. 00C1738, 2000 WL 562470, at *2 (N.D.Ill. May 3, 2000) (reviewing court is not bound by outcome of UDRP proceedings). Finally, despite the language of the UDRP, including the provision that disputes may be submitted to a court for independent resolution, as well as the language of the ACPA, Cello argues that awards under the UDRP are subject to limited review under the Federal Arbitration Act. Cello cites no authority for this proposition and fails to mention contrary authority. *See Parisi v. Netlearning, Inc.,* 139 F.Supp.2d 745, 751 (E.D.Va.2001) (disputes decided under UDRP are not subject to judicial review of arbitration awards under Federal Arbitration Act, for UDRP "contemplates parallel litigation" and nothing therein "restrains either party from

filing suit before, after, or during the administrative proceedings").

### c) *Cello's Improper Motives*

Based on the record before me, I find that Cello acted to harass Storey and to cause both unnecessary delay and needless increase in the cost of litigation. I find also that at a minimum Cello's counsel failed to make reasonable inquiry under the circumstances; this failure contributed to the unnecessary delay and needless increase in the cost of litigation.

The record includes, as reviewed above, multiple instances of misleading statements and omissions and the assertion of baseless arguments and defenses. *See Polar Int'l Brokerage v. Reeve*, 196 F.R.D. 13 (S.D.N.Y.2000) (holding that Rule 11 sanctions were warranted by conflicting assertions made by lead counsel in a securities fraud class action concerning whether the tender offer at issue was adequate or fair to members of the shareholder class). Based on my familiarity with and supervision of the proceedings in this case as well as the first action, I have no doubt that Cello, with substantially greater resources than Storey, sought to wear Storey down. Just as the First Action was to be tried, Cello withdrew its claims, only to reassert them some two months later. Then, despite warnings from this Court and the opportunity provided by the safe harbor provision of Rule 11 to re-evaluate its defense of this action, Cello chose not to withdraw its answer and persisted in pressing its meritless arguments and defenses, which were based largely on factual misrepresentations.

A reasonably competent attorney would have known that the dismissal "with prejudice" of the First Action would have barred future claims based on the same causes of action. A reasonably competent attorney would not have asserted the September 25th Letter as a purported "new act of cybersquatting" without first reviewing Cello's arbitration complaint and seeing that Cello gave a completely different reason for bringing the arbitration and did not mention the September 25th Letter at all. A reasonably competent attorney would not have argued that Storey had waived his right to challenge the arbitration award because of his "voluntary participation" when all he did was object to the arbitration proceedings on *res judicata* grounds and renew, in the alternative, the arguments he had made in the First Action. A reasonably competent attorney would not have argued that Storey had missed the ten-day deadline when the documents in Cello's possession made it crystal clear that he had not. A reasonably competent attorney would not have presented an entire point arguing that the arbitration award was "final and binding," subject only to limited judicial review under the Federal Arbitration Act, when the UDRP, the ACPA, and the case law make it clear that the reviewing court should reach an "independent resolution."

Sanctions will be imposed against both Cello (pursuant to Rule 11(b)(1), (3), and (4)) and its counsel (pursuant to Rule 11(b)(1), (2), (3), and (4)). Moreover, I conclude that "unusual circumstances exist that warrant the award to Storey of reasonable attorney's fees and costs incurred as the result of the Rule 11 violations."

### CONCLUSION

For the reasons set forth above, Cello's motion for summary judgment is denied and Storey's motions for summary judgment and sanctions, in the form of attorneys' fees and costs, are granted.

Judgment shall be entered in favor of Storey for the relief requested in the complaint. Storey shall submit a proposed judgment on or before February 1, 2002, together with an affidavit from counsel

setting forth an application for attorneys' fees and costs as a result of the Rule 11 violations. Cello and its counsel shall submit any written objections on or before February 8, 2002.

SO ORDERED.