

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-28-2003

# Toys R Us Inc v. Step Two

Precedential or Non-Precedential: Precedential

Docket 01-3390

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Toys R Us Inc v. Step Two" (2003). *2003 Decisions.* Paper 815.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/815

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed January 27, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3390

TOYS "R" US, INC.;
GEOFFREY, INC.,

Appellants

v.

STEP TWO, S.A.;
IMAGINARIUM NET, S.L.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

District Court Judge: Honorable Katharine S. Hayden
(D.C. No. 01-00632)

Argued: September 12, 2002

Before: ALITO and FUENTES, Circuit Judges,
and OBERDORFER,* District Judge.

(Opinion Filed: January 27, 2003)

_____

* The Honorable Louis F. Oberdorfer, Senior District Judge for the
District of Columbia, sitting by designation.


        PAUL FIELDS (Argued)
        ROBERT S. WEISBEN
        HEATHER C. WILDE
        Darby & Darby
        805 Third Avenue
        New York, NY 10022

        Counsel for Appellants

        SUSAN H. FARINA
        MARK G. MATUSCHAK (Argued)
        ELIZABETH M. REILLY
        Hale & Dorr
        60 State Street
        Boston, MA 02109

        Counsel for Appellees

OPINION OF THE COURT

OBERDORFER, District Judge:

Toys "R" Us, Inc. and Geoffrey, Inc. ("Toys") brought this action against Step Two, S.A. and Imaginarium Net, S.L. ("Step Two"), alleging that Step Two used its Internet web sites to engage in trademark infringement, unfair competition, misuse of the trademark notice symbol, and unlawful "cybersquatting," in violation of the Lanham Act, 15 U.S.C. S 1501 et seq., and New Jersey state law. The District Court denied Toys' request for jurisdictional discovery and, simultaneously, granted Step Two's motion to dismiss for lack of personal jurisdiction. We hold that the District Court should not have denied Toys' request for jurisdictional discovery. We therefore reverse and remand for limited jurisdictional discovery, relating to Step Two's business activities in the United States, and for reconsideration of personal jurisdiction with the benefit of the product of that discovery, with a view to its renewing administration of the case, in the event the District Court finds that it does have jurisdiction.

I.

Toys, a Delaware corporation with its headquarters in New Jersey, owns retail stores worldwide where it sells toys,

2

games, and numerous other products. In August 1999, Toys acquired Imaginarium Toy Centers, Inc., which owned and operated a network of "Imaginarium" stores for the sale of educational toys and games. As part of this acquisition, Toys acquired several Imaginarium trademarks, and subsequently filed applications for the registration of additional Imaginarium marks. Prior to Toys' acquisition, the owners of the Imaginarium mark had been marketing a line of educational toys and games since 1985 and had first registered the Imaginarium mark with the United States Patent and Trademark Office in 1989. Toys currently owns thirty-seven freestanding Imaginarium stores in the U.S., of which seven are located in New Jersey. In addition, there are Imaginarium shops within 175 of the Toys "R" Us stores in the U.S., including five New Jersey stores.

Step Two is a Spanish corporation that owns or has franchised toy stores operating under the name "Imaginarium" in Spain and nine other countries. It first registered the Imaginarium mark in Spain in 1991, and opened its first Imaginarium store in the Spanish city of Zaragoza in November 1992. Step Two began expanding its chain of Imaginarium stores by means of a franchise system in 1994. It has registered the Imaginarium mark in several other countries where its stores are located. There are now 165 Step Two Imaginarium stores. The stores have the same unique facade and logo as those owned by Toys, and sell the same types of merchandise as Toys sells in its Imaginarium stores. However, Step Two does not operate any stores, maintain any offices or bank accounts, or have any employees anywhere in the United States. Nor does it pay taxes to the U.S. or to any U.S. state. (JA 135-36.) Step Two maintains that it has not directed any advertising or

marketing efforts towards the United States. The record does, however, indicate some contacts between Step Two and the United States: for example, a portion of the merchandise sold at Step Two's Imaginarium stores is purchased from vendors in the United States. Additionally, Felix Tena, President of Step Two, attends the New York Toy Fair once each year. (JA 314.)

In the mid-1990s, both parties turned to the Internet to boost their sales. In 1995, Imaginarium Toy Centers, Inc.

3

(which Toys later acquired) registered the domain name <imaginarium.com> and launched a web site featuring merchandise sold at Imaginarium stores. In 1996, Step Two registered the domain name <imaginarium.es>, and began advertising merchandise that was available at its Imaginarium stores.1 In April 1999, Imaginarium Toy Centers registered the domain name <imaginarium.net>, and launched another web site where it offered Imaginarium merchandise for sale. In June 1999, Step Two registered two additional "Imaginarium" domain names, <imaginariumworld.com> and <imaginarium-world.com>. In May 2000, Step Two registered three more domain names: <imaginariumnet.com>, <imaginariumnet.net>, and <imaginariumnet.org>.2 Step Two's web sites are maintained by Imaginarium Net, S.L., a subsidiary of Step Two, S.A. formed in 2000.

At the time this lawsuit was filed, four of the aforementioned sites operated by Step Two were interactive, allowing users to purchase merchandise online.3 When buying merchandise via Step Two's web sites, purchasers are asked to input their name and email address, as well as a credit card number, delivery address, and phone number. At no point during the online purchase process are users asked to input their billing or mailing address. The web sites provide a contact phone number within Spain that

_____

1. Step Two maintains that goods have been available for purchase via its web site only since November 2000. Before that time, merchandise was advertised, but not sold, online.

2. Step Two originally contracted with the European company Intercomputer Soft, S.A. (now owned by PsiNet Europe) to register the domain names <imaginariumworld.com> and <imaginarium world.com>, and with the European company Interdomain to register <imaginariumnet.com>, <imaginariumnet.net>, and <imaginariumnet.org>. These domain names were ultimately registered with Network Solutions, Inc. ("NSI"), a U.S. company. Step Two pays PsiNet Europe to maintain these domain names, and does not send any payments to NSI. (JA 314.)

3. The web sites at <imaginariumnet.com> and <imaginariumnet.net> were not used to sell merchandise. Discovery may be necessary to determine whether Step Two has changed its web sites during the course of this litigation.

lacks the country code that a user overseas would need to dial. Moreover, the prices are in Spanish pesetas and Euros, and goods ordered from those sites can be shipped only within Spain. Step Two's Imaginarium web sites are entirely in Spanish.

Visitors to the four sales-oriented Step Two web sites may elect to receive an electronic newsletter, or sign up for membership in "Club Imaginarium," a promotional club with games and information for children. Each registrant for Club Imaginarium is required to provide a name and an email address. At the time this suit was filed, there was a section for "voluntary information," including the registrant's home address, on the Club Imaginarium registration page. This optional portion of the page required users to choose from a pull-down list of Spanish provinces, and did not accommodate mailing addresses in the United States.4 After joining Club Imaginarium via the web site, registrants receive an automatic email response.

Mr. Tena submitted an affidavit stating that Step Two had not made any sales via its web sites to U.S. residents. (JA 136.) Toys, however, adduced evidence of two sales to residents of New Jersey conducted via Step Two's Imaginarium web sites. These purchases were initiated by Toys. Lydia Leon, a legal assistant in the Legal Department of Geoffrey, Inc., made the first purchase. Ms. Leon, a resident of New Jersey, purchased a toy via <www.imaginariumworld.com> on January 23, 2001. (JA 167-69.) The second purchase was made in February 2001 by Luis M. Lopez, an employee of Darby & Darby P.C., attorneys for Toys. Mr. Lopez is also a resident of New Jersey, and accessed <www.imaginarium.es> to make his purchase. (JA 207-14.)

For both of these sales, the items were shipped to Angeles Benavides Davila, a Toys employee in Madrid,

---

4. An earlier version of the Club Imaginarium registration form was included in the record as Exhibit N of the Affidavit of Luis M. Lopez. (JA 272.) This page asked users to input the "Province," and did not have a pull-down menu. There was no field for "Country." According to Step Two, this alternate version was available only at <www.imaginariumnet.org>.

Spain; Ms. Benavides Davila then forwarded the items to the offices of Geoffrey, Inc. in New Jersey. Both purchases were made with credit cards issued by U.S. banks. Additionally, both purchasers received in New Jersey an email confirming their purchases, and a subsequent email with a login and password to access Club Imaginarium. One of the two purchasers also separately registered for

Club Imaginarium, exchanged emails with a Step Two employee about his purchase, and received a copy of an email newsletter from Step Two. Aside from these two sales, there is no evidence in the record of a sale to anyone in the United States. After learning of these two sales, Mr. Tena submitted a second affidavit stating that his company does not know where its purchasers reside, as that information is not apparent from a purchaser's email address, and Step Two keeps records only of shipping addresses. (JA 310-11.)

On February 7, 2001, Toys filed the instant complaint against Step Two in federal district court. Step Two moved to dismiss for lack of personal jurisdiction on April 10, 2001. Toys opposed the motion, and requested discovery on the issue of jurisdiction. After hearing oral argument on July 30, 2001, the District Court denied the discovery request and granted the motion to dismiss. Toys appealed these decisions on August 28, 2001.

II.

In the following discussion, we first consider the standard for personal jurisdiction based upon a defendant's operation of a commercially interactive web site, as articulated by courts within this circuit and other Courts of Appeals. In light of that standard and the arguments presented in the proceeding below, we then assess the propriety of the District Court's denial of jurisdictional discovery.

A. Personal Jurisdiction Based on the Operation of a
     Web Site

The advent of the Internet has required courts to fashion guidelines for when personal jurisdiction can be based on a defendant's operation of a web site. Courts have sought to articulate a standard that both embodies traditional

rules and accounts for new factual scenarios created by the Internet. Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the "plaintiff 's cause of action is related to or arises out of the defendant's contacts with the forum." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). Beyond this basic nexus, for a finding of specific personal jurisdiction, the Due Process Clause of the Fifth Amendment requires (1) that the "defendant ha[ve] constitutionally sufficient 'minimum contacts' with the forum," id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)), and (2) that "subjecting the defendant to the court's jurisdiction comports with 'traditional notions of fair play and substantial justice,' " id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 301, 316 (1945)). The first requirement, "minimum contacts," has been defined as " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits

and protections of its laws.' " Asahi Metal Indus. Co., Ltd. v.
Superior Court of California, 480 U.S. 102, 109 (1987)
(quoting Burger King Corp., 471 U.S. at 475). Second,
jurisdiction exists only if its exercise "comports with
traditional notions of fair play and substantial justice," i.e.,
the defendant "should reasonably anticipate being haled
into court" in that forum. World-Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 297 (1980).

The precise question raised by this case is whether the
operation of a commercially interactive web site accessible
in the forum state is sufficient to support specific personal
jurisdiction, or whether there must be additional evidence
that the defendant has "purposefully availed" itself of the
privilege of engaging in activity in that state. Prior decisions
indicate that such evidence is necessary, and that it should
reflect intentional interaction with the forum state. If a
defendant web site operator intentionally targets the site to
the forum state, and/or knowingly conducts business with
forum state residents via the site, then the "purposeful
availment" requirement is satisfied. Below, we first review
cases from this and other circuits that articulate this
requirement. Next, we consider the role of related non-
Internet contacts in demonstrating purposeful availment.

7

We then assess whether the "purposeful availment"
requirement has been satisfied in the present case.

1. The "Purposeful Availment" Requirement in
      Internet Cases

a. Third Circuit Cases

The opinion in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952
F. Supp. 1119 (W.D. Pa. 1997) has become a seminal
authority regarding personal jurisdiction based upon the
operation of an Internet web site. The court in Zippo
stressed that the propriety of exercising jurisdiction
depends on where on a sliding scale of commercial
interactivity the web site falls. In cases where the defendant
is clearly doing business through its web site in the forum
state, and where the claim relates to or arises out of use of
the web site, the Zippo court held that personal jurisdiction
exists. Id. at 1124. In reaching this conclusion, the Zippo
court relied on CompuServe, Inc. v. Patterson , 89 F.3d 1257
(6th Cir. 1996), which found the exercise of personal
jurisdiction to be proper where the commercial web site's
interactivity reflected specifically intended interaction with
residents of the forum state. Zippo, 952 F. Supp. at 1124
(citing CompuServe, 89 F.3d at 1264-66).

Analyzing the case before it, the Zippo court similarly
underscored the intentional nature of the defendant's
conduct vis-a-vis the forum state. In Zippo, the defendant
had purposefully availed itself of doing business in
Pennsylvania when it "repeatedly and consciously chose to
process Pennsylvania residents' applications and to assign

them passwords," knowing that the contacts would result in business relationships with Pennsylvania customers. Id. at 1126. The court summarized the pivotal importance of intentionality as follows:

> When a defendant makes a conscious choice to conduct business with the residents of a forum state, 'it has clear notice that it is subject to suit there.' . . . If [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, . . . it could have chosen not to sell its services to Pennsylvania residents.

Id. at 1126-27 (citing World-Wide Volkswagen, 444 U.S. at 297).

Since Zippo, several district court decisions from this Circuit have made explicit the requirement that the defendant intentionally interact with the forum state via the web site in order to show purposeful availment and, in turn, justify the exercise of specific personal jurisdiction. See, e.g., S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc., 79 F. Supp. 2d 537, 540 (E.D. Pa. 1999) (observing that "a web site targeted at a particular jurisdiction is likely to give rise to personal jurisdiction."). As another district court in this Circuit put it, "[c]ourts have repeatedly recognized that there must be 'something more' . . . to demonstrate that the defendant directed its activity towards the forum state." Desktop Technologies, Inc. v. Colorworks Reprod. & Design, 1999 WL 98572, at *5 (E.D. Pa. Feb. 25, 1999) (citation omitted) (emphasis added).

b. Case Law from Other Circuits

Several Courts of Appeals decisions have adopted "purposeful availment" requirements that are consistent with the principles articulated in the Zippo line of cases. The Fourth Circuit, in ALS Scan v. Digital Service Consultants, Inc., 293 F.3d 707 (4th Cir. 2002), expressly incorporated an "intentionality" requirement when fashioning a test for personal jurisdiction in the context of the Internet:

> a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

Id. at 714 (emphasis added).

In Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997), the Ninth Circuit considered an infringement action brought against a Florida web site operator whose allegedly infringing site was accessible in Arizona, the state where the plaintiff had its principal place of business. In declining

to exercise specific personal jurisdiction, the Cybersell court found there must be " 'something more'[beyond the mere posting of a passive web site] to indicate that the defendant

purposefully (albeit electronically) directed his activity in a substantial way to the forum state." Id. at 418. Decisions from other circuits have articulated similar standards. See, e.g., Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 890 (6th Cir. 2002) (holding that the purposeful availment requirement is satisfied "if the web site is interactive to a degree that reveals specifically intended interaction with residents of the state") (citation omitted) (emphasis added).

2. Non-Internet Contacts

In deciding whether to exercise jurisdiction over a cause of action arising from a defendant's operation of a web site, a court may consider the defendant's related non-Internet activities as part of the "purposeful availment" calculus. One case that relies on non-Internet contacts for the exercise of jurisdiction -- a case Toys repeatedly cites -- is Euromarket Designs, Inc. v. Crate and Barrel Ltd ., 96 F. Supp. 2d 824 (N.D. Ill. 2000). In Euromarket, the court exercised jurisdiction over an Irish manufacturer based on its commercially interactive web site, even though the products purchased through the web site could not be shipped to Illinois. The court identified a number of non-Internet contacts between the defendant and Illinois, including the fact that the defendant's vendors included Illinois suppliers, its attendance at trade shows in Illinois, and its advertisement in publications that circulate in the United States (albeit originating outside). Id. at 838. The Euromarket court also relied on the fact that the defendant billed Illinois customers, collected revenues from Illinois customers, and recorded sales from goods ordered from Illinois, id., and that the web site was designed to accommodate addresses in the United States. Id. at 836.

Thus far, Toys has not shown that Step Two maintained the type of contacts that supported jurisdiction in Euromarket -- i.e., that the defendant intentionally and knowingly transacted business with residents of the forum state, and had significant other contacts with the forum besides those generated by its web site. This limited record does not provide an occasion for us to spell out the exact mix of Internet and non-Internet contacts required to support an exercise of personal jurisdiction. That determination should be made on a case-by-case basis by

assessing the "nature and quality" of the contacts. Zippo, 952 F. Supp. at 1127 (quoting Int'l Shoe, 320 U.S. at 320). However, non-internet contacts such as serial business trips to the forum state, telephone and fax communications directed to the forum state, purchase contracts with forum

state residents, contracts that apply the law of the forum state, and advertisements in local newspapers, may form part of the "something more" needed to establish personal jurisdiction. See Barrett v. Catacombs Press, 44 F. Supp. 2d 717, 726 (E.D. Pa. 1999), and cases there collected. It is noteworthy that the Supreme Court in Burger King Corp., when expounding on the "minimum contacts" requirement, referred generally to a defendant's "activities" in the forum state -- a term that includes the aforementioned non-Internet contacts. Burger King Corp., 471 U.S. at 475.

3. Personal Jurisdiction over Step Two

As Zippo and the Courts of Appeals decisions indicate, the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.

Based on the facts established in this case thus far, Toys has failed to satisfy the purposeful availment requirement. Step Two's web sites, while commercial and interactive, do not appear to have been designed or intended to reach customers in New Jersey. Step Two's web sites are entirely in Spanish; prices for its merchandise are in pesetas or Euros, and merchandise can be shipped only to addresses within Spain. Most important, none of the portions of Step Two's web sites are designed to accommodate addresses within the United States. While it is possible to join Club Imaginarium and receive newsletters with only an email address, Step Two asks registrants to indicate their residence using fields that are not designed for addresses in the United States.

Moreover, the record may not now support a finding that

11

Step Two knowingly conducted business with residents of New Jersey. The only documented sales to persons in the United States are the two contacts orchestrated by Toys, and it appears that Step Two scarcely recognized that sales with U.S. residents had been consummated.5

At best, Toys has presented only inconclusive circumstantial evidence to suggest that Step Two targeted its web site to New Jersey residents, or that it purposefully availed itself of any effort to conduct activity in New Jersey. Many of the grounds for jurisdiction that Toys advanced below have been deemed insufficient by the courts. First, the two documented sales appear to be the kind of "fortuitous," "random," and "attenuated" contacts that the Supreme Court has held insufficient to warrant the exercise of jurisdiction. See Burger King Corp., 471 U.S. at 475 (citations omitted). As for the electronic newsletters and

other email correspondence, "telephone communication or mail sent by a defendant [do] not trigger personal jurisdiction if they 'do not show purposeful availment.' " Barrett, 44 F. Supp. 2d at 729 (quoting Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 556 (3d Cir. 1993)). The court in Barrett found that the exchange of three emails between the plaintiff and defendant regarding the contents of the defendant's web site, without more, did not "amount to the level of purposeful targeting required under the minimum contacts analysis." Id. at 729; see also

---

5. Toys argues that Step Two was aware that it was conducting business with New Jersey residents. In particular, Toys points to the email correspondence between Mr. Luis M. Lopez and a representative of Step Two regarding Mr. Lopez's overpayment. Mr. Lopez requested that the difference be mailed to his home address in "South Orange, NJ 07079," but did not spell out "New Jersey" or specify that he resided in the United States. (JA 254, 256.) The Step Two representative, apparently uncertain about the address, sent a reply stating"I have received your address and as far as I can see, it is pretty far from here (we are in Zaragoza). I would appreciate your giving me more information on the address so that I can be sure that it will arrive." (JA 256.) Mr. Lopez's response to this message -- if he sent one -- is not included in the record. Although Step Two ultimately learned that Mr. Lopez is a United States resident, a trier of fact could reasonably find from the correspondence that the company did not contemplate that sales would occur with U.S.-based purchasers.

12

Machulsky v. Hall, 210 F. Supp. 2d 531, 542 (D.N.J. 2002) (minimal email correspondence, "by itself or even in conjunction with a single purchase, does not constitute sufficient minimum contacts."). Non-Internet contacts, such as Mr. Tena's visits to New York and the relationships with U.S. vendors, have not been explored sufficiently to determine whether they are related to Toys' cause of action, or whether they reflect "purposeful availment."

Absent further evidence showing purposeful availment, Toys cannot establish specific jurisdiction over Step Two.6 However, any information regarding Step Two's intent vis-a-vis its Internet business and regarding other related contacts is known by Step Two, and can be learned by Toys only through discovery. The District Court's denial of jurisdictional discovery is thus a critical issue, insofar as it may have prevented Toys from obtaining the information needed to establish personal jurisdiction. We next turn to whether the District Court properly denied Toys' request for jurisdictional discovery.

B. Jurisdictional Discovery

The pivotal issue on appeal is whether the District Court erred in denying Toys' request for jurisdictional discovery. A district court's decision to deny jurisdictional discovery is reviewed for abuse of discretion. See Brumfield v. Sanders,

---

6. As an alternative to the "minimum contacts" analysis for specific jurisdiction, Toys argues that jurisdiction over Step Two may be based on the "effects" test. Following the lead of the Supreme Court in Calder v. Jones, 465 U.S. 783, 788-89 (1984), the Third Circuit has held that personal jurisdiction may, under certain circumstances, be based on the effects in the forum state of a defendant's tortious actions elsewhere. Remick v. Manfredy, 238 F.3d 248, 258 (3d Cir. 2001). One of the Third Circuit's requirements is that the "defendant expressly aimed his tortious conduct at the forum . . . ." Id.  (internal quotations omitted).

Even assuming that Step Two's registration of the Imaginarium domain names and its operation of web sites under that name bring about an injury to Toys in New Jersey (its corporate headquarters), Toys has failed to establish that Step Two engaged in intentionally tortious conduct expressly aimed at New Jersey. In the present case, this intentionality requirement is the key missing component for jurisdiction under either the "minimum contacts" analysis or the "effects" test.

13

232 F.3d 376, 380 (3d Cir. 2000); Pacitti v. Macy's, 193 F.3d 766, 776 (3d Cir. 1999).

Toys requested jurisdictional discovery for the purpose of establishing either specific personal jurisdiction, or jurisdiction under the federal long-arm statute, Fed. R. Civ. P. 4(k)(2).7 The District Court denied Toys' request, explaining that "the clear focus of the Court is directed, as it should be, to the web site[,] [a]nd to the activity of the defendants related to that web site, which is making sales here, . . ." The court added that "the apparent contradictions, if such there will be in the Tena affidavit, [and] what else Mr. Tena might have been doing here, just have no relationship to where the eye is directed and should stay and that is, the web site activities of this defendant." (JA 13-14.)

We are persuaded that the District Court erred when it denied Toys' request for jurisdictional discovery. The court's unwavering focus on the web site precluded consideration of other Internet and non-Internet contacts -- indicated in various parts of the record -- which, if explored, might provide the "something more" needed to bring Step Two within our jurisdiction. Cybersell, Inc., 130 F.3d at 418; Desktop Technologies, Inc., 1999 WL 98572, at *3. Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, Pinker, 292 F.3d at 368, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff 's claim is "clearly frivolous." Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997). If a plaintiff presents factual allegations that suggest "with reasonable particularity" the possible existence of the requisite "contacts between [the party] and the forum state," Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992), the plaintiff 's right to conduct jurisdictional discovery should be sustained.

7. The federal long-arm statute sanctions personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of U.S. law, but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state.

14

Where the plaintiff has made this required threshold showing, courts within this Circuit have sustained the right to conduct discovery before the district court dismisses for lack of personal jurisdiction. See, e.g., In re Automotive Refinishing Paint Antitrust Litigation, 2002 WL 31261330, at *9 (E.D. Pa. July 31, 2002) (denying motion to dismiss and permitting jurisdictional discovery where plaintiff made a "threshold prima facie showing of personal jurisdiction over Defendants"); W. Africa Trading & Shipping Co., et al. v. London Int'l Group, et al., 968 F. Supp. 996, 1001 (D.N.J. 1997) (denying defendant's motion to dismiss where the plaintiffs' "request for jurisdictional discovery is critical to the determination of whether [the court can] exercise personal jurisdiction over the defendant."); Centralized Health Systems, Inc. v. Cambridge Medical Instruments, Inc., 1989 WL 136277, at *1 (E.D. Pa. Nov. 8, 1989) (holding motion to dismiss in abeyance to permit party to take discovery on jurisdiction where distribution arrangement might satisfy minimum contacts). Here, instead of adopting a deferential approach to Toys' request for discovery, the District Court appears to have focused entirely on the web site, thereby preventing further inquiry into non-Internet contacts.

The record before the District Court contained sufficient non-frivolous allegations (and admissions) to support the request for jurisdictional discovery. First, Toys' complaint alleges that Step Two has "completely copied the IMAGINARIUM concept" from Toys. Compl. at P 24. For example, Toys alleges that "the mix of toys sold by Step Two is identical to the mix of toys sold by Toys under the IMAGINARIUM mark," and that "Step Two continues to copy Toys' marketing developments and Intellectual property." Id. at PP 24, 25. Underlying Toys' complaint is its concern that Step Two is "attempt[ing] to expand [its] business throughout the world including the United States by operating international web sites that offer goods similar to the goods offered in Toy's [sic] IMAGINARIUM stores." Id. at P 29. Step Two's intent, according to Toys, is to "capitalize for [its] own pecuniary gain on the goodwill and excellent reputation of Toys . . . ." Id. at P 50.

It is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the

15

plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff. Pinker, 292 F.3d at 368. Given

the allegations as to Step Two's mimicry of Toys' ventures on the Internet and its copy-cat marketing efforts, it would be reasonable to allow more detailed discovery into Step Two's business plans for purchases, sales, and marketing. Limited discovery relating to these matters would shed light on the extent, if any, Step Two's business activity-- including, but not limited to, its web site -- were aimed towards the United States. This information, known only to Step Two, would speak to an essential element of the personal jurisdiction calculus.

Other aspects of the record should have also alerted the District Court to the possible existence of the"something else" needed to exercise personal jurisdiction. For example, Step Two concedes that a portion of the merchandise sold through its Imaginarium stores and web sites are purchased from U.S. vendors, and that Mr. Tena attends the New York Toy Fair each year. Further discovery into the vendor relationships and Mr. Tena's activities here, if any, may shed light on Step Two's intentions with respect to the U.S. market, or the extent of its business contacts in the United States. Discovery might also reveal whether these non-Internet contacts directly facilitate Step Two's alleged exploitation of Toys' marketing techniques by providing it with a supply of items identical to Toys' inventory to sell on its web sites.

The two documented sales to residents of New Jersey-- and the subsequent emails sent from Step Two to the two purchasers -- also speak "with reasonable particularity" to the possible existence of contacts needed to support jurisdiction. Mellon Bank (East) PSFS, 960 F.2d at 1223. Although affiliates of Toys orchestrated the two sales, Mr. Tena's conflicting affidavits raise the possibility that additional sales to U.S. residents may have been conducted via the web sites. The need for additional discovery regarding sales is further underscored by the parties' uncertainty as to whether the residence of purchasers can

16

be determined from their credit card number or through some other electronic means.8

Counsel for Toys mentioned some of these contacts when it explained to the District Court why it should be allowed jurisdictional discovery:

> Mr. Tena states in his affidavit that he has substantial regular and systematic contacts with the United States, [and] he attends trade shows. He purchases from vendors in the United States. I think at the very least, Your Honor, we should be able to inquire into what these substantial and continuing contacts are. Because apparently he buys a lot of the toys that he resells from U.S. vendors, because the ones that we have got were in English that we would be permitted to take discovery on that aspect. To determine whether or not . . . he has made more sales within the State of New

Jersey and in the United States as a whole, as far as accepting orders from United States residents. And/or whether there's a basis for general jurisdiction under Rule 4(k)(2), because of his regular and systematic contacts with the United States. Apparently a lot of his toys are obtained through United States vendors.

(JA 389.)

Toys' request for jurisdictional discovery was specific, non-frivolous, and a logical follow-up based on the information known to Toys. The District Court erred by denying this reasonable request. Toys should be allowed jurisdictional discovery, on the limited issue of Step Two's business activities in the United States, including business

_____

8. In its brief on appeal, Step Two contends that Toys should not be allowed discovery because there is simply no basis for believing that there are any other contacts to find and, moreover, seeking discovery about other web site-generated contacts would be futile as Step Two does not keep track of billing addresses or the physical location of its email correspondents. At oral argument, however, counsel for Toys suggested there are means by which an individual's residence can be determined from a credit card number. Toys also suggests, in its brief on appeal, that the residence of on-line purchasers may be determined from the phone number that purchasers are required to input. These possibilities can be explored through discovery.

17

plans, marketing strategies, sales, and other commercial interactions. Although Step Two does not appear to have widespread contacts with the United States, this limited discovery will also help determine whether jurisdiction exists under the federal long-arm statute. Accordingly, on remand, the District Court should consider whether any newly discovered facts will support jurisdiction under traditional jurisdictional analysis, or under Rule 4(k)(2).

CONCLUSION

For all of the reasons set forth above, we reverse the District Court's denial of Toys' request for jurisdictional discovery, vacate the District Court's dismissal of Toys' complaint, and remand the case for limited jurisdictional discovery guided by the foregoing analysis, and for reconsideration of jurisdiction with the benefit of the product of that discovery.

A True Copy:
Teste:

Clerk of the United States Court of Appeals for the Third Circuit

18