**AMERIPAY, LLC, Plaintiff,**

v.

**AMERIPAY PAYROLL, LTD., Defendant.**

No. 03–CV–3534 (FSH).

United States District Court, D. New Jersey.

July 20, 2004.

---

Richard L. Ravin, Hartman & Winnicki, P.C., Paramus, NJ, for Plaintiff.

### OPINION & ORDER

HOCHBERG, District Judge.

This matter is before this Court upon a federal trademark infringement action between Plaintiff Ameripay, LLC and Defendant Ameripay Payroll, Ltd. Defendant has filed a Motion to Dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) and, alternatively, a Motion to Transfer Venue to the Northern District of Illinois under 28 U.S.C. § 1404(a). This Court has reviewed the submissions of the parties pursuant to Fed.R.Civ.P. 78.

### BACKGROUND

Plaintiff and Defendant are payroll service providers headquartered in New Jersey and Illinois, respectively. On or about October 21, 1999, Plaintiff, owner of the "AMERIPAY" trademark, discovered that Defendant had acquired the Internet do-

main name "ameripay.com".[1] On July 24, 2003, Plaintiff filed suit alleging that Defendant violated the Lanham Act by registering and operating "ameripay.com" for the purpose of doing business as a payroll service provider. Plaintiff brought federal trademark infringement, unfair competition, and cybersquatting claims, as well as several state claims.

Defendant's website at "ameripay.com" is accessible from all computers connected to the Internet, including those in New Jersey. The site is both informational and interactive. It describes the company's services and provides contact information. Its interactive features allow users to download programs from the site; however, installation of the programs requires a license key available only to Defendant's clients. Remote software installation is possible by accessing the software WebEx, but there is currently no evidence of WebEx access by any computer in New Jersey. The site also includes Employee Self Service ("ESS"), a feature that allows employees, including those living in New Jersey, to view their pay history, edit their personnel data, and view check stubs online.

Defendant has no clients in New Jersey.[2] It focuses its marketing in Illinois, where 96% of its clients are located. A few of Defendant's clients have employees who reside in New Jersey. As part of its payroll services, Defendant makes 342 annual tax filings with the State of New Jersey on behalf of its clients' 131 New Jersey employees. Each year, Defendant issues directly to its clients about 5,100 checks for these 131 employees. Defendant has no other contacts with New Jersey.[3]

### STANDARD

### I. Personal Jurisdiction

A court may determine that personal jurisdiction exists when a defendant has "minimum contacts" with the forum state and if asserting jurisdiction based on those contacts comports with "fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[4] On a motion under Fed.R.Civ.P. 12(b)(2), the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish jurisdiction. *Carteret Sav. Bank,*

---

1. Plaintiff initiated an opposition proceeding with the United States Patent and Trademark Office (the "USPTO"). On March 21, 2003, Defendant withdrew its application for the "AMERIPAY" mark pending before the USPTO.

2. One of Defendant's clients, John S. Swift, Co. ("Swift"), is located in Illinois and has a wholly-owned subsidiary in New Jersey. Defendant does not conduct business directly with the subsidiary, but rather sends all correspondence and payments to Swift's headquarters in Illinois.

 In addition, after Peter Palladino, a New Jersey business owner, visited "ameripay.com" and inquired about Defendant's payroll services, Defendant responded on March 17, 2003 with an email and an attached price quote for payroll services bearing the "AMERIPAY" mark. Defendant did not further correspond with Palladino and has never entered into a contract with him or any other New Jersey company.

3. It has never attended business meetings in New Jersey or negotiated or executed contracts here. It has no offices, bank accounts, or employees in New Jersey and owns no property here. It is not authorized to do business in New Jersey, has no agents here, does not advertise here, does not pay its own taxes here, and derives no revenue from within the state.

4. New Jersey's Long Arm Statute, N.J. Ct. R. 4:4-4, permits the assertion of personal jurisdiction as far as is constitutionally permissible. *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir.1981).

*FA v. Shushan*, 954 F.2d 141, 146 (3d Cir.1992). A court must accept as true the allegations in the complaint and resolve disputed issues of fact in favor of the plaintiff. *Id.* at 142 n. 1. However, the plaintiff cannot rely on the pleadings alone but must provide actual proofs. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir.1984). Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable. *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1226 (3d Cir.1992).

### A. *Minimum Contacts*

■ A court can assert either specific or general jurisdiction over a defendant. Specific jurisdiction requires the defendant to have "minimum" contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In addition, the lawsuit must "arise out of" or "relate to" these minimum contacts. *Id.* Furthermore, the defendant must have purposefully availed itself of the forum such that it "should reasonably anticipate being haled into court" there, having invoked the benefits and protections of the forum's laws. *Id.* at 474–75, 105 S.Ct. 2174.

■ General jurisdiction, by contrast, requires the defendant to have "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). These contacts need not relate to the subject matter of the litigation. *Id.* at 415 n. 9, 104 S.Ct. 1868. However, general jurisdiction requires "a very high threshold of business activity." *Compagnie des Bauxites de Guinea v. Ins. Co. of N. America*, 651 F.2d 877, 891 n. 2 (3d Cir.1981) (finding that a "daily presence" in the forum

and activities such as weekly advertising, regular solicitation of business, substantial product sales, and the maintenance of a telephone number in the forum meet the threshold).

■ A website operated by the defendant may provide contacts sufficient to support jurisdiction. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir.2003). If a website is neither "passive," i.e., solely informational, nor "commercially interactive," i.e., capable of executing contracts over the Internet, then jurisdiction depends on: (1) the level of interactivity; and (2) the commercial nature of the exchange that occurs on the site. *Id.*

■ However, in trademark infringement actions there must be "something more" than the infringement itself to show that the defendant directed its activity towards the forum. *Machulsky v. Hall*, 210 F.Supp.2d 531, 539 (D.N.J.2002). The defendant must have purposely availed itself of the forum by targeting its website there, knowingly conducting business with forum residents through the website, or by non-internet contacts, such as communications, business trips, or contracts in the forum. *Toys "R" Us*, 318 F.3d at 452–55 (finding a site that was designed primarily for sales to European customers not to be directed at New Jersey, despite two online sales to New Jersey residents and related email correspondence). When a defendant sells its services to subscribers in the forum, *American Network, Inc. v. Access America/Connect Atlanta, Inc.*, 975 F.Supp. 494, 499 (S.D.N.Y.1997), or assigns forum residents passwords knowing that the contacts will result in business relationships, *Zippo Manuf. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1126 (W.D.Pa.1997), courts have asserted jurisdiction based on an infringing website. By contrast, a defendant who operated an in-

fringing website but conducted business solely abroad and did not use its website to attract business in the forum was not subject to personal jurisdiction there. *Desktop Techs., Inc. v. Colorworks Reproduction & Design, Inc.,* 1999 WL 98572, *6 (E.D.Pa.1999).

### B. *Fair Play and Substantial Justice*

■■■■ Jurisdiction must also be reasonable. *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 (finding that the assertion of jurisdiction must comport with "fair play and substantial justice"). A court must determine reasonableness by balancing the burden on the defendant, the forum's interest in adjudicating the dispute, the judicial system's interest in the efficient resolution of disputes, the interests of the several states in furthering fundamental social policies, and the plaintiff's interest in convenient and effective relief. *Id.* at 476–77, 105 S.Ct. 2174. However, whether the plaintiff's claim is time-barred in another forum cannot be considered in the jurisdictional analysis. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 778, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 574 (2d Cir.1996).

### C. *Jurisdictional Discovery*

■■■ If the plaintiff can allege with "reasonable particularity" the possible existence of the requisite jurisdictional contacts, then jurisdictional discovery should be granted. *See, e.g., Toys "R" Us,* 318 F.3d at 456–57 (granting discovery because the request was not "frivolous," since the

court had improperly denied discovery of non-Internet contacts).

### II. *Transfer of Venue*

■■■ The court has discretion to transfer an action to any district where it might have originally been brought for the "convenience" of the parties and witnesses and in the interest of "justice" under 28 U.S.C. § 1404(a). *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). The movant has the burden of showing the need to transfer. *Id.*

### *DISCUSSION*

### I. *Personal Jurisdiction*

#### A. *Minimum Contacts*

Plaintiff has failed to show that Defendant's contacts with New Jersey are sufficient to support specific or general jurisdiction. Plaintiff alleges five types of contacts between Defendant and New Jersey: (1) its infringing website, (2) its correspondence with Palladino, (3) its issuance of checks, (4) its relationship with Swift, and (5) its filing of employee taxes in the forum.

#### 1. *Specific Jurisdiction*

Among Plaintiff's alleged contacts between Defendant and New Jersey, the only ones relevant to an inquiry of specific jurisdiction are Defendant's website and its correspondence with Palladino.[5]

■■■ Defendant's website is partly interactive but incapable of executing contracts online; therefore, it must be evaluated based on its level of interactivity and

---

**5.** Plaintiff's claims "arise out of" the website, since Defendant's registration of "ameripay.com" caused Plaintiff to file suit, and Defendant's email to Palladino "relates to" Plaintiff's trademark infringement claim, since Palladino found Defendant by using "ameripay.com" and the price quote was

emailed to him using the "AMERIPAY" mark. These alleged contacts are not "continuous and systematic" and therefore do not require a general jurisdiction analysis. *Helicopteros Nacionales de Colombia,* 466 U.S. at 416, 104 S.Ct. 1868.

commercial nature. *Toys "R" Us*, 318 F.3d at 452. Although "ameripay.com" is interactive in that it allows software download, remote software installation, and payroll account monitoring, its interactive functions are highly restricted. Defendant distributes its software license key only to its non-New Jersey clients and does not use WebEx to control any computer in New Jersey. Although the 131 New Jersey employees of Defendant's clients can interact with the website through the ESS feature, the nature of the interaction is entirely non-commercial, as it is limited to account monitoring.

■ Defendant's mere email of a price quote to Palladino falls short of constituting the "something more" necessary to demonstrate purposeful availment, since Defendant neither targets its website at New Jersey residents nor conducts any online business with New Jersey residents. *Machulsky*, 210 F.Supp.2d at 539. In *Toys "R" Us*, the court found the defendant's contacts to be insufficient where defendant marketed its products abroad but made two isolated sales to New Jersey residents. 318 F.3d at 454–55; *See also Desktop Techs.*, 1999 WL 98572 at *6. In the instant case, given that Defendant marketed its products primarily in Illinois and did not make any sales to New Jersey residents, Defendant's correspondence with Palladino *a fortiori* does not constitute "minimum" contacts.

Defendant, a company with 96% of its clients in Illinois and no clients in New Jersey, could not "reasonably anticipate being haled into [New Jersey] court" due solely to an isolated non-contractual email

exchange with a forum resident and a universally accessible website. *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174. Had Defendant further negotiated or executed a contract with Palladino, their relationship might approach the level of "minimum" contacts; however, since Defendant's minimal email correspondence with Palladino does not indicate purposeful availment, it does not constitute "minimum" contacts. *Toys "R" Us*, 318 F.3d at 454. Although Defendant's website may infringe on Plaintiff's trademark in New Jersey, Plaintiff has failed to show Defendant's purposeful availment of the forum. Accordingly, this Court cannot assert specific jurisdiction over Defendant.[6]

### 2. *General Jurisdiction*

■ This Court now examines Plaintiff's remaining alleged contacts between Defendant and New Jersey under general jurisdiction analysis, since these alleged contacts involve actions that were "continuous and systematic." *Helicopteros Nacionales de Colombia*, 466 U.S. at 416, 104 S.Ct. 1868. First, Defendant's annual issuance of 5,100 checks to the 131 New Jersey employees of its clients is not a direct "contact" with New Jersey residents, since Defendant issues the checks to its non-New Jersey clients who in turn issue them to their employees (some of whom are New Jersey residents). Second, Defendant's relationship with Swift is not a "contact" with New Jersey, since Defendant only does business with Swift's Illinois headquarters and has no relationship with its New Jersey subsidiary. Finally, Defendant's 342 annual filings of its clients' employees' payroll taxes with the

---

6. This conclusion is further supported by the fact that Defendant has never sold its services in the forum, *cf. American Network*, 975 F.Supp. at 499 (finding jurisdiction where defendant sells its services), and that Defendant has not assigned passwords to forum residents to create a contractual relationship, since all of its clients are located outside of New Jersey, *cf. Zippo Manuf.*, 952 F.Supp. at 1119 (asserting jurisdiction where defendant assigns passwords to forum residents with the view toward creating business relationships).

State of New Jersey do not meet the standard of "continuous and systematic" contacts because the filings were prepared outside the forum for non-New Jersey clients, whose employees happened to be residing in New Jersey. *See Poole v. Sasson*, 122 F.Supp.2d. 556, 559 (E.D.Pa.2000) (holding that an accountant's mailing of tax returns prepared outside the forum to his clients in the forum for filing did not constitute "minimum" contacts).

In the instant case, Defendant does not sell products to, make business trips into, have a license to do business in, solicit business in, or maintain a telephone listing, bank account, or office in the forum. Because Plaintiff has not carried its burden in overcoming the high standard of establishing that Defendant had "continuous and systematic" contacts with new Jersey, this Court shall not exercise general jurisdiction. *Carteret Sav. Bank*, 954 F.2d at 146; *Bane v. Netlink*, 925 F.2d 637, 640 (3d Cir.1991) (holding that plaintiff bears the burden of proof once defendant raises the jurisdictional defense).

### B. *Fair Play and Substantial Justice*

Since Plaintiff has failed to carry its burden in demonstrating minimum contacts, it is not necessary to evaluate the reasonableness of asserting jurisdiction. *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154.

### C. *Jurisdictional Discovery*

Plaintiff has requested additional discovery opportunities to establish Defendant's jurisdictional contacts. In this case, however, additional discovery is inappropriate because Plaintiff has not suggested with "reasonable particularity" the possible existence of jurisdictional contacts. *Toys "R" Us*, 318 F.3d at 457. Since Plaintiff has already taken discovery and has not been improperly limited in its discovery, there is no basis for further discovery here. *Id.*

### II. *Transfer of Venue*

 Because this Court has found that it lacks personal jurisdiction over Defendant, it is not necessary to determine the merits of Defendant's motion under 28 U.S.C. § 1404(a). Instead, transfer is possible only under 28 U.S.C. § 1631, which allows the transfer of any civil action for lack of jurisdiction to any other court in which the action could have been brought at the time it was filed if it is in the interest of justice. Plaintiff contends that it would be prejudiced by a transfer of venue due to the expiration of the statute of limitations in Illinois. Although the expiration of the statute of limitations is relevant to the transfer of venue analysis, *Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir.1981), it is not a consideration in the jurisdictional inquiry. *Keeton*, 465 U.S. at 778, 104 S.Ct. 1473; *Metro. Life Ins. Co.*, 84 F.3d at 574. Because this Court may not exercise personal jurisdiction over the instant action, it is in the interest of justice that this action be transferred to the Northern District of Illinois, where it could have been filed originally and where Plaintiff may seek equitable tolling relief.

### CONCLUSION

This Court finds that Plaintiff has not carried its burden of establishing that this Court may exercise personal jurisdiction in the instant case. Because this Court does not have personal jurisdiction, Defendant's Motion for Transfer of Venue under 28 U.S.C. § 1404(a) is denied as moot.

Accordingly, **IT IS** on this 20th day of July 2004, hereby

**ORDERED** that Defendant's Motion to Dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) is **GRANTED**; and it is further

**ORDERED** that Defendant's Motion to Transfer Venue to the Northern District of Illinois pursuant 28 U.S.C. § 1404(a) is **DENIED** as moot; and it is further

**ORDERED** that this case shall be transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1631; and it is further

**ORDERED** that this case is **CLOSED.**